## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**LEONG FRANCISCO PAULO,**

               ***Plaintiff,***

**v.**

**AGENCE FRANCE-PRESSE,
GETTY IMAGES (US), INC.,
GETTY IMAGES, INC., and
JOHN DOES 1-100,**

       ***Defendants,***

<u>**COMPLAINT FOR DAMAGES
BASED ON COPYRIGHT
INFRINGEMENTS**</u>

**DEMAND FOR JURY TRIAL**

Plaintiff Leong Francisco Paulo, for his complaint against Defendants Agence France-Presse ("AFP"), Getty Images, (US) Inc. and Getty Images, Inc. ("Getty"), alleges upon personal knowledge as to his own conduct, and on information and belief based on the investigation of Plaintiffs' counsel, as to all other conducted alleged herein, as follows:

## I.  INTRODUCTION

1.      This case is about the systematic exploitation of a professional photojournalist by one of the world's largest news agencies, Agence France-Presse, and its wrongful claim of ownership of 34,500 photos (the "Photos") captured of newsworthy events in Europe and Africa by Plaintiff Leong Francisco Paulo from 2005 to 2018. Plaintiff alleges that AFP and Getty Images, AFP's photo licensing agency in the United States and other countries, caused and continue to cause significant damages in the United States to Plaintiff for the complete usurpation and piracy of Plaintiff's body of work as a journalist.

2.      This complaint arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et. seq. (the "Copyright Act"), with Plaintiff seeking relief for five (5) causes of action: Count 1 for a declaratory judgment as to the copyright ownership of each of the 34,500

Photos captured by Plaintiff as the author, Count 2 for copyright infringement of the 34,500

Photos caused by Defendants, Count 3 for copyright management information ("CMI")

violations of at least 34,500 of the Photos pursuant to 17 U.S.C. §§ 1202 and 1203 et. seq., where

the CMI information included false CMI that was added by Defendants using a Getty and/or

AFP watermark on each Photo, Count 4 for contributory copyright infringement and contributory

addition of false copyright management information by AFP, and Count 5 for vicarious

copyright infringement and contributory copyright management information violations by AFP.

3.       Pursuant to FRCP 44.1, Plaintiff intends to introduce relevant material and

sources, including expert testimony and opinions from Portuguese lawyers and scholars, to

support application of Portuguese and/or European Union laws that will determine the basis of

the ownership of the Photos at issue and/or the nullification of the perpetual, exclusive rights

clause (Clause 7) found in the terminated AFP employment contract between Plaintiff and AFP.

The application of these laws includes but is not limited to Portugal's Copyright Code (Código

do Direito de Autor e dos Direitos Conexos ("CDADC"), the Portugal's Journalist Statutes, the

Portugal's Civil Code, Portugal's labor laws, and other European Union Directives involving

copyright and the rights of journalists.

4.       Portugal's Copyright Code, the CDADC, distinguishes between an author's moral

and economic rights in their copyrighted work. While an author (such as a photojournalist) can

never divest himself of his moral rights,[1] he may elect to license or transfer his economic rights

in whole or in part,[2] just as his U.S. counterpart might.[3] A partial transfer of economic rights

(e.g., a non-exclusive license) requires a signed writing that is notarized by a lawyer or a notary

---

[1] CDADC, Title I, Chapter VI, Article 56 (Moral Rights).
[2] CDADC, Title I, Chapter V, Articles 41 (Authorization Regime), 43 (Partial Transmission or Encumbrance).
[3] CDADC, Title II, Chapter I, Section I, Articles 67 (Fruition and Use) & 68 (Ways of Use).

under penalty of nullity.[4] As alleged below, the total and complete transfer of economic rights (e.g., an exclusive license in perpetuity or full assignment of copyright interest) can only be established through the execution of a **public deed, which did not occur here.**[5]

5.      From March 2005 through October 31, 2010, Plaintiff accepted assignments from AFP's Lisbon, Portugal bureau as a freelance "stringer" journalist, though there is no written employment agreement from this period. From November 1, 2010 until April 1, 2019, AFP's Lisbon bureau employed Plaintiff as a full-time staff photographer. This relationship was memorialized in a written employment agreement. Hereinafter the "AFP Contract," attached as Exhibit "A" along with translation of the Portuguese version into English, attached as Exhibit "A1."[6]

6.      Under Portugal's law governing agency and commercial representation agreements, Decreto-Lei 178/86 de 3 de Julho (Decree-Law 178/86 of July 3), a contract such as the employment contract between Plaintiff and AFP can be terminated at any time for cause with adequate notice, including those in which the durational term is undefined or, applying basic Portuguese civil law principles, is perpetual.[7]

7.      On or about November 30, 2018, after Plaintiff requested that AFP reimburse him for certain travel costs and clarification on the copyright ownership of his Photos, AFP suspended him. Shortly thereafter, on April 1, 2019, AFP terminated Plaintiff.

8.      On or about April 17, 2019, Plaintiff served AFP, through his Portuguese legal counsel, a notice in which he asserted his copyright ownership of the Photos that he created

---

[4] CDADC, Title I, Chapter V, Article 43(2) (Partial Transmission or Encumbrance).
[5] CDADC, Title I, Chapter V, Article 44 (Total Transmission).
[6] The English translation of the AFP Contract is for illustration purpose only and Plaintiff reserves the right to revise or amend with an alternate translation(s).
[7] *See* Decree-Law 178/86 of July 3, Contracts of Agency or Commercial Representation, Chapter IV, Article 28.1 (Termination by Complaint).

during the 2005-2010 stringer period and the 2010-2018 staffer period. In the notice, Plaintiff

also demanded AFP cease its ongoing unlawful display and licensing of his photos. AFP refused

and continued to display and attempt to his license the Photos through Getty Images, its various

commercial merchandising websites, and other licensing sites controlled by AFP.

9.      In May 2019, a Portuguese labor court found that AFP had wrongfully terminated

Plaintiff, leading AFP to pay Plaintiff both a compensatory and a punitive award reduced to a

settlement agreement, attached as Exhibit B.

10.     In December 2019, Plaintiff filed a declaratory action in Lisbon, Portugal to void

the "perpetual, exclusive exploitation" clause (akin to complete transfer of the economic rights in

his photos) in the terminated AFP Contract (Clause 7), alleging it to be illegal and void under

Portuguese labor law, the Portuguese's Journalist Statutes, and the 2019 EU directive relating to

copyright for the reasons alleged below. As AFP is aware, that court proceeding is being

conducted in Portugal's labor court, not its copyright court, a fact which does nothing to

foreclose the filing of this case in the United States.

11.     In August of 2020, AFP and Getty finally ceased its unlawful display and

licensing attempts of most of Plaintiff's Photos. However, despite at least four (4) cease-and-

desist notices, at least 42 ore more of the photos are still being wrongly used as of the date of this

Complaint.

12.     Once this Court determines and finds that Plaintiff is the sole copyright holder of

the 34,500 Photos captured from 2005 to 2018 by Plaintiff, Plaintiff has standing under the US

Copyright Act to seek remedies for the infringements and other wrongs committed in the United

States by Defendants. For purposes on this Complaint, Plaintiff alleges that the Photos are

separated into two (2) time periods which affect the analysis of the copyright issue: the 2005 to

2010 Photos (the "**Stringer Photos**") and the November 1, 2010 to November 30, 2018 photos captured while a staffer with AFP (the "**Staffer Photos**").[8]

## II. THE PARTIES

13.    Plaintiff Leong Francisco Paulo (a/k/a Francisco Leong, his professional name)("Plaintiff") is a resident of Portugal. Leong Francisco Paulo is the author of 34,500 photographs and seeks a declaration that he is the sole copyright owner of the Photos at issue. Because the Photos are likely considered "foreign works," Plaintiff likely need not have registered each photo with the United States Copyright Office before initiating this action. Plaintiff nevertheless has registered 8,657 photos, pursuant to Section 104(b)(2) of the Copyright Act so that he may pursue statutory damages and preserve his ownership in the Photos. However, Plaintiff has been unable to register the other 25,843 of Photos because AFP has frustrated the registration process by refusing to produce a copy of each photo, despite his repeated respectful demands for such as the author and creator under Portuguese law, as well as European Union directives which AFP is now benefiting from with revenue sharing deals with Google and other tech platforms.

14.    Defendant Agence France-Presse ("AFP") is a French state-owned international entity, headquartered in Paris, with its main North America location at 1500 K St. NW #600, Washington, DC 20005, and an office in this District at 747 3rd Ave, New York, New York 10017. AFP is a news agency publisher that produces and publishes news articles, photographs, videos, and graphics to a worldwide audience created and authored by its stringers and staff journalists.

---

[8] The terms "Stringer" and "Staffer" are illustrative terms used to differentiate between the two different time periods at issue and are not intended to carry a legal significance or waiver of any rights by Plaintiff.

15.     Defendants Getty Images, Inc. and Getty Images (US), Inc. (collectively referred to as "Getty" or "Getty Images") are both Delaware corporations, having each of their principal places of business at 605 Fifth Ave South, Suite 400, Seattle, Washington 98104, and an office in this District at 195 Broadway, Floor 10, New York, New York 10027. With an archive of over 200 million photos, Getty is one of the world's largest visual media companies and licensing agency of stock images, editorial and commercial photography, video and music for businesses and consumers in almost 200 countries around the world. Getty sells subscriptions to its archive as well as individual licensing of photos.

16.     Plaintiff alleges that Getty Images is likely independently liable for its own wrongful conduct. Alternatively, AFP, using Getty Images as its licensing agent, is contributorily and/or vicariously liable for Getty's wrongful conduct because, upon information and belief, AFP has the right and ability to supervise the infringing activity of Getty and AFP also has a direct financial interest in such infringing activities, including the addition of false CMI such as the Getty Images watermark.

17.     Based on publicly filed court documents and previous findings of the Court in this District, Getty does not qualify as a service provider under the Digital Millennium Copyright Act of 1998 ("DMCA"). Further, upon information and belief, Getty Images contracts with AFP to use "images obtained by AFP staff and stringers" and offer licenses of those images. Based on publicly available documents, there are likely agreements at issue that Plaintiff does not possess but are generally known as the "Getty Images EULA," the "AFP/Getty Images License Agreement" and the "AFP Subscription Agreement" which show the revenue sharing of licensing fees found under the "AFP/Getty Images License Agreement Schedule" and other terms.  See *AFP v. Morel et. al.*, Dkt. 170., Case 1:10-cv-02730-AJN, June 8, 2012.

18.     As to all other potentially liable defendants, Plaintiff does not yet know the identity of all defendants that infringed on Plaintiff's photos and had direct, participation in or personally authorized the conduct found to have violated the Copyright Act and were not merely tangentially involved. Upon learning of the identities of said individuals or entities, Plaintiff will move to amend to name the individuals as defendants.

19.     Whenever in this complaint it is alleged that Defendant(s) committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, directors, executives, management, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, executives, management, agents, servants, or employees.

### III.     JURISDICTION AND VENUE

20.     This is a civil action seeking damages, injunctive relief and declaratory relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.

21.     This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

22.     Plaintiff alleges that this Court has exclusive jurisdiction regarding claims made under the US Copyright Act and CMI violations.

23.     Venue is proper in this District because Defendants (1) committed an intentional act (copyright infringement), (2) expressly aimed at the forum state of New York, (3) and caused harm that the Defendants know would likely be suffered in the forum state.

24.    Upon information and belief, AFP and Getty both currently have offices in this District.

25.    The claims alleged also arise out of or relate to Defendants' regular and systematic activities in the District and the fact that Plaintiff would not have been injured but for Defendants' conduct directed toward him in the District.

26.    Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases) because all Defendants may be found in this District conducting business.  This Court has *in personam* jurisdiction over Defendants because the Defendants availed themselves of the privileges of conducting business in this District and the State of New York and incurred a benefit from such infringements, thus it is reasonable for Defendants to submit to the jurisdiction of this New York federal district court.

27.    Both Defendants have filed suit and extensively litigated in this District, having been found liable for willful copyright infringement and CMI violations in *AFP vs. Morel vs. AFP and Getty Images, No. 10-CV-2730 AJN, 2014 WL 3963124, at *1 (S.D.N.Y. Aug. 13, 2014).*

28.    Defendants have regularly and systematically transacted business within New York and contracted for services in here in connection with the matters giving rise to this suit.

## IV. FACTUAL ALLEGATIONS

### A. The Importance of US Copyright and Bundle of Rights

29.    Copyrights are the legal title to intellectual property by which creators of original works such as photos protect their exclusive moral and economic rights to exploit those works.

30.    Respecting and defending the financial value and exploitation rights of creators' copyrighted works is a bedrock of US democracy, considered so important that the Founders

enshrined the U.S. Constitution with specific references to copyrights, and which expressly gave Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Article I, Section 8. "Copyright law encourages people to create original works and thereby 'ultimately serves the purpose of enriching the general public through access to creative works.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

31.     The United States Supreme Court found that by "establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985).

32.     The importance of copyright enforcement is not limited to this country. Dating back to the early 1500s, French courts recognized that only the creators of works, or their assigned heirs, should have the right to publish those works.

33.     In 1886, more than 10 countries signed the Berne Convention for the Protection of Literary and Artistic Works, whose stated purpose is the "protection of the rights of authors in their literary and artistic works." The Convention ensures that authors are afforded the same protections in those signatory countries as they would enjoy within their own country, thereby promoting the worldwide distribution of creative works while at the same time ensuring that the rights of the author of a work created in one country will not be circumvented through the infringement of those rights in another country. As of the date of this Complaint, as many as 179 countries, including the United States, France and Portugal, have signed the Berne Convention.

34.     Section 106 of the Copyright Act (the "Act") grants copyright owners the exclusive economic rights and control for value of their works. The Act makes it illegal to reproduce, create derivative works from, distribute, publicly perform, or publicly display

copyrighted work except in limited instances, and provides for damages if any of these rights are infringed.

35.     In 1976, the Act was amended to give content creators such as Plaintiff an automatic copyright in his Photo. This automatic right is substantially the same as the rights Plaintiff enjoys in the European Union and Portugal, with notable exceptions described below.

36.     To file suit based on an alleged infringement, that automatic copyright interest must be registered with the U.S. Copyright Office, with some exceptions for "foreign works," based on the copyright of the country where the work was created or first published.

37.     Even if no exceptions apply to the registration requirement of the Photos in order to file suit, it should be noted that, "Any work that is protected by U.S. copyright law can be registered. This includes many works of foreign origin. All works that are unpublished, regardless of the nationality of the author, are protected in the United States. Works that are first published in the United States or in a country with which we have a copyright treaty or that are created by a citizen or domiciliary of a country with which we have a copyright treaty are also protected and may therefore be registered with the U.S. Copyright Office." See Circular 38a, International Copyright Relations of the United States, for the status of specific countries, and Circular 38b, Copyright Restoration Under the URAA.[9]

**B. Plaintiff is the Sole Copyright Owner of his Photos Under Portuguese, EU and US Law**

38.     Plaintiff is a professional photographer and journalist with over 20 years of experience, capturing photos of world leaders, international conflicts and major sporting events. Plaintiff has used his own training, experience, expression, direction, artistic skills, and creativity in capturing newsworthy events as they unfolded using a camera. He has witnessed and captured

---

[9] See https://www.copyright.gov/help/faq/faq-who.html

many of these newsworthy events under some of the most challenging and dangerous conditions. Armed militants in Syria kidnapped him. His vehicle came under heavy gunfire in Ukraine. He was so severely injured in a car crash while fleeing shelling and bombing in Libya, and required six months of physical rehabilitation. That Libyan crash also destroyed a hard drive containing Plaintiff's only copies of some of the Photos at issue.

39.     From March 2005 until April 2019, Plaintiff performed services as a journalist for AFP based out of its Lisbon office. The Portuguese Journalist Statutes define journalists as: "those who perform, as their main, permanent, and paid occupation, editorial functions of research, collection, selection and treatment of facts, news or opinions, through text, image, or sound, intended for dissemination, for information purposes, by the press, news agency, radio, television, or any other electronic means of dissemination." *See* Article 1 of the JS.

40.     When determining the copyright owner of a work created on foreign soil, US District Courts generally look to law of the foreign country where the work was created or first published. "The Berne Convention, 1986 U.S.T. 160, to which the United States, Poland, and Belgium [and Portugal] are all signatories, applies to international copyright protections. Under the Convention, the law of the signatory country with the closest relationship to the international work at issue governs determination of copyright ownership." *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90–91 (2nd Cir.1998).

41.     However, U.S. federal district courts are competent to make copyright determinations applying foreign law and have done so in the past. As alleged, Plaintiff gives notice of his intent to apply foreign law.[10]

---

[10] Plaintiff anticipates that AFP and/or Getty will attempt to delay this Court from ruling by falsely asserting that only a Portuguese court is competent to determine the copyright owner for all the Photos, even the Stringer Photos.

42.     "As a general matter, the law of the jurisdiction where an artistic work is 'created' and 'first published' governs issues concerning copyright ownership […] By contrast, the Second Circuit has analogized copyright *infringement* issues to tort claims […] Consistent with the principle of *lex loci delicti* often applied in tort suits, the law of the jurisdiction where the allegedly infringing acts take place generally governs infringement issues.*" Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14-CV-9270 (RJS), 2016 WL 7507757, at *3 (S.D.N.Y. Dec. 30, 2016), aff'd, 747 F. App'x 3 (2d Cir. 2018) (internal citations omitted, emphasis original).

43.     Under the U.S. Copyright Office's Compendium of U.S. Copyright Practices Section 2002.2 Treatment of Foreign Works: "U.S. law applies whenever a United States work or a foreign work is involved in a copyright infringement lawsuit in this country."[11]

44.     To determine copyright ownership of the Photos under Portuguese copyright law, this court will likely need to apply the CDADC (Copyright Code), the Portuguese Journalist Statutes ("JS"), the Portuguese Civil Code ("CC"), or European Union Law if necessary.

45.     Under Portuguese copyright law, it is up to the person who created or captured the photo to invoke a right in the photo and to assert and prove the facts that constitute that right as the author of the photo. Therefore, it is up to Plaintiff to assert and prove with regard to each of the Photos: a) his authorship; and b) that it is the original result of his creative effort and reflects, independently of any subjective appreciation of its quality, his personality, as an expression of the creative efforts of his spirit as a journalist.

46.     Under Article 12 (Recognition of Copyright) of the CDADC, copyright of a work is recognized regardless of registration, filing of a deposit copy, or any other formality.

---

[11] U.S. Copyright Office, Compendium of U.S. Copyright Practices § 2002.2 (3d ed. 2021).

47.     Under Article 43 (Partial Transfer or Encumbrance) of the CDADC, part 2, contracts that have as their object (i.e., a photo) the "transfer" or "partial encumbrance" of copyright must be included in a "written document with notarization of signatures, *under penalty of nullity"* (emphasis added). Under part 3, the instrument must also include "a description of each photo, and the conditions of exercise, namely as to time and place, and, if the deal is onerous, as to price. <u>None of the Photos in question are subject to an agreement between the parties that meets these requirements</u>.

48.     Under Article 44 (Total Transmission) of the CDADC, the sole mechanism for fully divesting an author of his copyright in his work, as in cases of an exclusive license or assignment, is through the issuance of a **notarized public deed,** which must include language referencing the type of work, a description of the identification of each photo, the price paid, and all material terms, *under penalty of nullity*. <u>None of the Photos in question are subject to an agreement between the parties that meets these requirements</u>.

49.     Under Article 174 (Protection of Journalistic Work) of the CDADC, part 1, "[t]he copyright on journalistic work produced in fulfilment of an employment contract that includes identification of authorship, by signature or otherwise, **belongs to the author**."

50.     Under Article 7-B (Copyright of Salaried Journalists) of Portugal's Journalist Statutes, part 3, media company employers enjoy the exclusive right to use a journalist's otherwise protected work *only* for a period of 30 days from the date it was first displayed to the public in the media property or on any website owned by the media company, after which time, the media company, such as AFP, must obtain the journalist's consent and must be legally and fully compensated for each use.

51.     As found in the Portuguese Copyright Law Manual (2020, p. 352), a photojournalist's photographic work is considered a journalistic work, while a journalist is someone such as Plaintiff, who is licensed to practice journalism in Portugal under JE-75 (formerly, 7061A). Therefore, Article 174 of the CDADC applies to Plaintiff's Photos. The AFP Contract clearly states that Plaintiff is a journalist, even referencing him as "the journalist" in the first sentence of Clause 7.

52.     As this pertains to Plaintiff's Stringer Photos, the general rule in Article 11 of the CDADC is that, if no written agreement exists licensing or transmitting copyrights, then the ownership of works protected under copyright law belongs to its author, in this case, the Plaintiff.

53.     Further, under Article 11 of the CDADC, authorship of journalistic works of freelancer or stringer photographers belong exclusively to the author that captured the photo and only that author can authorize any subsequent reproduction, which happens to be consistent with AFP's position as articulated by Marielle Eudes in 2012, AFP's then editorial director, who is now AFP's current photo director. See 2012 AFP annual report "The World, The Whole Story."

54.     From March 2005 through October 31, 2010, Plaintiff performed services as a freelance photographer, or "stringer" journalist for AFP without a written employment agreement, who sent him on various assignments to cover throughout Europe and Africa. AFP admits in writing that there is no written agreement regarding any of the assignments while Plaintiff was a stringer or terms associated with the Photos Plaintiff captured.

55.     As Plaintiff performed services as a stringer for AFP from March 2005 until October 31, 2010, he was generally paid a flat fee per assignment as a photojournalist and received byline credit for each photo taken. Therefore, with the requirements of CDADC

Articles 43 and 44 unmet, it is indisputable under Portuguese law that only Plaintiff can be the copyright holder of each photo he captured.

56.     From March 2005 until October 31, 2010, as a stringer, Plaintiff captured approximately 10,262 photos and is the creator, author and exclusive holder of all moral and economic rights under Portuguese law, European Union law and for purpose of this case, US law. During this time, Plaintiff supplied a copy of each photo he captured to AFP for a limited, 30-day exclusive license for AFP to publish (generally the same day) often (but not always) accompanying written articles for display and distribution over the internet and/or in print to nearly all countries of the world where AFP's reach is found.

57.     After expiration of the 30-day exclusivity period for each "Stringer Photo," all economic rights in that Photo reverted to Plaintiff, including the bundle of rights under the US Copyright Act described above. Based on Plaintiff's ongoing professional relationship with AFP, first as a stringer, then through a course of performance as a staffer under the AFP Contract, he granted AFP a limited, ongoing, nonexclusive license to the Photos. These "post-exclusivity-period licenses" were in effect until AFP terminated Plaintiff's employment on or about April 1, 2019, as is described in more detail below. The termination of the parties' professional relationship had the effect of terminating AFP's license to the Stringer (and the Staffer) Photos. Pursuant to the termination, Plaintiff demanded AFP cease its use of all his Photos in his letter of April 17, 2019. To be clear, Plaintiff does not believe he can seek damages for AFP's use of the Photos for the period prior to his termination in 2019, and only seeks a declaratory judgment for the copyright ownership of the Photos and damages he sustained once he revoked the licensing of the Photos to AFP on April 17, 2019.

58.     It is an indisputable fact that AFP and Plaintiff never entered into an agreement (oral or written) that transferred Plaintiff's exclusive economic rights in the Stringer Photos to AFP, or one that perpetually granted AFP authorization to license the Stringer Photos to agencies such as Getty Images. AFP may claim that such agreement exists or existed; however, AFP has previously admitted in writing that no such agreement exists in its possession or control with regard to any of the Stringer Photos.

59.     Even if AFP somehow "uncovers" documents (that did not exist or that it could not be locate in August 2020) to support its claim that Plaintiff assigned his entire copyright interest in the Stringer Photos to AFP, article 44 of the CDADC mandates that this be accomplished through a "**Public Deed**" that incorporates specific language regarding each photo at issue. Under Portuguese law, if any of these formalities are missing, then any alleged transfer of the creator's copyright interest (his economic rights) in the photo is null and void.[12]

60.     On or about November 1, 2010, Plaintiff's stringer period ended when he signed the AFP Contract, making him a staff photographer. Notably, the AFP Contract was neither a public deed, nor was it notarized by a notary or a lawyer under penalty of nullity. The AFP Contract permitted Plaintiff, a journalist, to perform his journalist services within his own rights to "freedom of expression" and "artistic creativity" which is entirely of his own accord as confirmed in Articles 37 and 42 of the Journalist Statute.

61.     From about November 1, 2010, until about November 30, 2018, Plaintiff captured approximately 24,238 photos, referred to as the Staffer Photos.

62.     On or about November 30, 2018, AFP suspended Plaintiff from going out on any additional assignments.

---

[12] CDADC Art. 44.

63.     On or about April 1, 2019, AFP wrongly terminated Plaintiff from his employment under the AFP Contract after a dispute arose between the parties in November 2018 regarding reimbursement of expenses. As noted above, pursuant to the termination, Plaintiff demanded AFP cease its use of all his Photos in his letter of April 17, 2019. AFP has admitted in writing that this was the point in time that Plaintiff put his stake in the ground and "**decided to claim from AFP ownership of all the photographs he took not only while he was a mere stringer, but also when he was working as an employee of AFP, and also, claiming a compensation for all the uses and licenses granted by AFP over the photos taken while working for AFP**." *See* AFP Memo issued in 2020.

64.     In other words, April 17, 2019 marks the point in time when Plaintiff made his claim for copyright ownership and when any US copyright claims could begin accruing. A copyright infringement claim in the US can only accrue once ownership of the copyrighted work is established and its unauthorized use violates one of the owner's exclusive rights under 17 U.S.C. § 106A(a).[13]

65.     Under Portuguese law, as AFP concedes, it is Plaintiff's discretionary right and decision when to claim ownership of his photographic works and seek compensation for their use whenever he so chooses.[14]

66.     Critically, there is no clause in the AFP Contract that references the Stringer Photos, let alone one that purports to transfer the copyright interest (economic rights) in the Stringer Photos to AFP. Therefore, the Stringer Photos and Staffer Photos are clearly two separate categories of photos in dispute.

---

[13] *See* 17 U.S.C. § 501.
[14] See CDADC Article 173.

67.     After being wrongfully terminated in April 2019 by AFP, Plaintiff filed a labor claim ("Labor Case One") against AFP. See Portuguese Proceeding nº 7083/19.8T8LSB-A.

68.     On May 19, 2019, the Portuguese Court found in Plaintiff's favor that AFP's decision to terminate the employment contract violated Portuguese law.

69.     On May 22, 2019, Plaintiff followed up on his April 17 takedown notice to AFP with a second cease-and-desist takedown notice to stop using his Photos and again demanded AFP supply a copy of his Photos to him, offering to supply a hard drive to store the transfer of the files.

70.     On July 4, 2019, Portuguese Labor Case One was settled in part for the wrongful termination, evidenced by a written settlement agreement. See Ex. B, Settlement Agreement regarding wrongful termination. Under paragraph nine (9) of the Settlement Agreement, the sole issue left open by Plaintiff and AFP involved Clause 7 of the AFP Contract regarding the validity of AFP's claim of ownership to exclusive perpetual economic rights (exploitation rights) in the Staffer Photos after Plaintiff was terminated.[15]

71.     Notably, outside of any questions regarding Clause 7's validity, neither the AFP Contract nor the settlement agreement contained any "savings clause" that would allow Clause 7 to live on beyond the life of the contract.

72.     On December 27, 2019, Plaintiff, through counsel, file a declaratory action to strike or void clause 7 of the AFP Contract in a Lisbon, Portugal labor court. ("Labor Claim

---

[15] "The sole exception to the prior numbers of the current Clause concerns any type of claim regarding to author rights which the Second party [AFP] intends to present against the First Party [Plaintiff], the AFP Paris, or of any entity within the same group or related to the First Party, including without limitation regarding the discussion of the interpretation and application of Clause Seven of the employment contract entered into between the parties as of November 1, 2010 [the AFP Contract]."  Paragraph 9 of the Settlement Agreement. Exhibit B.

Two"). See Proc. nº 28168/19.5T8LSB. Plaintiff's claim seeks to strike or void Clause 7 of the

AFP Contract, based on overwhelming statutory law, case law and recent precedent in Portugal.

Clause 7 reads:

> The journalist acknowledges and accepts that the remuneration for a fixed amount that he receives includes the exclusive concession to Agence France-Presse of the exploitation rights (reproduction, representation, adaptation and distribution), as often as the AFP deems necessary, of the written works, pictures, sounds, videos, computer graphics produced by him in any way and by any means, in any language and in any form, including digital, by all present or future means of communication, on all present or future electronic storage devices, such as databases and online search engines, so that AFP may market them directly or through its distributors, partners or branches, to its customers for the range of its present and future products and services. The present encumbrance is valid for the whole duration of literary and artistic protection and for the whole world. [English translation]

See Exhibits A and A1.

73.     AFP contested as to whether the claim belonged in labor court, asserting that it

should be dismissed entirely or transferred to an intellectual property court, not a labor Court.

The court agreed with AFP's position and dismissed Labor Claim Two.

74.     Plaintiff filed an appeal of the dismissal, and on December 2, 2020, the

Portuguese appellate court agreed with Plaintiff's position, allowing Labor Claim Two to be

reinstated and proceed with a trial on the issue of striking or voiding Clause 7 in the AFP

Contract.

75.     On June 23, 2021, AFP's lawyers failed to appear at a court hearing, causing an

adjournment until October 6, 2021. On October 1, 2021, the court cancelled the trial date. As of

the filing of this Complaint, the trial date has yet to be rescheduled.

76.     Under Article 7/1 of the Portuguese Journalists Statutes ("JS"), labor laws which

govern the rights and responsibilities of the country's journalists, compensation for the

photographer's [Plaintiff's] work is **obligatory** and any contractual clause that ignores such legal

obligations is deemed to be <u>null and void under the law</u>, even if privately contracted.[16] By example, an employee in Portugal (or the US for that matter) cannot legally enter into a contract to work for below the federal minimum wage, or, using a more extreme example, a murder-for-hire contract. The law in the US and Portugal must, at minimum, void the offending clause and has the potential of voiding the entire contract for public policies reasons, statutes and/or case law.

77.     Despite Plaintiff filing Labor Claim Two in December 2019 in Portugal and despite instructing AFP to remove Plaintiff's Photos from any licensing agency and produce to him a copy of all the Photos he captured,[17] AFP continued (and still continues through licensing agencies such as Jiji Press and Getty Images) to sell, distribute, license, attempt to license, display and commercialize the Photos.

78.     Plaintiff sent a third cease-and-desist take down notice to AFP and Getty Images in August 2020, which resulted in most of the Photos being taken down from Getty's licensing site, but not all licensing sites that upon information and belief, Getty and/or AFP own or control or each have access to through sublicensing agreements.

---

[16] The flat-rate remuneration includes some rights but does not exclude additionally required compensation or remunerations, as legally provisioned in article 7-B of the JS.

[17] About 25,843 of Plaintiff's Photos were corrupted and unretrievable due to a hard drive that "crashed" and three (3) laptops that became inoperable, including one in a car crash in Libya. Despite multiple written requests from Plaintiff, AFP has refused to share a copy of each of the approximate 25,843 Photos lost due a corrupt hard drive and inoperable laptop computer, and even despite Plaintiff agreeing to pay for the duplication costs. Without a digital copy of each Photo (without a Getty or AFP watermark), Plaintiff cannot register the photos or realize the full economic value of his archive of Photos, which represents his life's body of work.

79.     During this time period, AFP has boasted that the Photos at issue were "not copyrightable"[18] yet AFP has separately claimed that it was copyright owner, and upon information and belief, even registered some or all of the Photos with the US Copyright Office.

80.     Also, in July of 2021, the French government levied a $593 Million fine against Google for its failure to share revenue from its search engine and the display of copyrighted works in the European Union, which includes content AFP publishes, including photos authored by its staff and stringer journalists.[19] AFP and Google resolved the dispute, but this shows that AFP will take contradictory legal and factual positions on the issue of copyrighted photos depending on how it benefits its own self-interest.[20] Not surprisingly and despite such EU directives in place, AFP has failed to share any of this revenue from Google with the journalists that are the copyright owners of these photos, such as Plaintiff.

81.     Plaintiff alleges that he terminated AFP's permission to exploit the economic rights of the Stringer and Staffer Photos upon issuing his first cease-and-desist takedown notice to AFP on April 17, 2019, in the wake of AFP's termination of his employment relationship, as AFP had no perpetual right to own or otherwise use the Photos and it is Portuguese law that any

---

[18] See Jaron Schneider, *Photo Agency Argues Photojournalists Do Not Have Copyright Protections*, PetaPixel, July 12, 2021, *available at*: https://petapixel.com/2021/07/12/photo-agency-argues-photojournalists-do-not-have-copyright-protections/.
[19] DIRECTIVE (EU) 2019/790 OF THE EUROPEAN PARLIAMENT AND OF THE COUNCIL of 17 April 2019 on copyright and related rights in the Digital Single Market and amending Directives 96/9/EC and 2001/29/EC. *See also:* https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32019L0790&from=EN  and https://www.brookings.edu/blog/techtank/2021/02/02/the-european-copyright-directive-potential-impacts-on-free-expression-and-privacy/#:~:text=In%202019%2C%20the%20European%20Parliament,national%20laws%20reflecting%20its%20provisions.
[20] See Google Will Pay AFP for Its News in First Deal After French Fine https://www.bloomberg.com/news/articles/2021-11-18/google-will-pay-afp-for-its-news-in-first-deal-after-french-fine.

contract with an undefined term can be terminated at any time with notice, and for other reasons alleged herein.

82.     Based on a lack of any Public Deed for any of Plaintiff's Photos, or any written instrument that has signatures notarized under penalty of nullity, there unequivocally cannot be any transfer (partial or full) of Plaintiff's copyright in the 34,500 Photos he captured pursuant Portuguese law. *See* CDADC Articles 43 and 44.

83.     On or about November 9, 2021, Plaintiff, through the undersigned counsel, sent a cease-and-desist notice letter via certified U.S. Mail to Defendants, demanding that AFP and Getty Images remove all of Plaintiff's Photos from public display and stop attempting to license the Photos, including on the various websites that were selling a license to the Photos commercially for wall art, coffee mugs, puzzles, and calendars, etc.

84.     Despite such demand on November 9, 2021, Defendant AFP and its agent, Getty, are still offering for license certain merchandise found on sites such as Amazon.com, Jiji Press, and AFP Australia (with the infringing merchandise boasting "**Made in USA**" and Pixel Perfect Guarantee) that contain Plaintiff's Photo(s).

85.     Also, Getty Images is still attempting to license and display at least 42 of the Photos that can be found at https://www.gettyimages.com/photos/francisco-leong?assettype=image&family=editorial&phrase=francisco%20leong&sort=mostpopular.  See Exhibit I, part 2 pages 8 to 10.  Getty Images is attempting to sell editorial licenses from $175.00 to $499.00 per license for each Photo depending on the size.  Upon information and belief, these are the same amounts that Getty has attempted to license all 34,500 Photos on behalf of AFP and is likely one measure of damages.

86.     As previously alleged, Plaintiff does not seek any damages for AFP's use of the Stringer Photos or the Staffer Photos for any use prior to his termination in April 2019, and only seeks declaratory relief and damages once he revoked the licensing of the Photos to AFP and/or his contract was terminated.

## V. CAUSES OF ACTION

## COUNT 1: DECLARATORY JUDGMENT AS TO THE COPYRIGHT OWNERSHIP OF THE PHOTOS PURSUANT TO 17 U.S. CODE § 201 & PORTUGUESE LAW

### (Against Defendant AFP)

87.     Plaintiff incorporates herein by reference each and every allegation contained in each paragraph above.

88.     AFP has without any basis in law or facts wrongly claimed that it is the copyright owner of the Photos (both the Stringer Photos and the Staffer Photos). See Exhibit C (a digital copy of the 8,657 Photos that were registered with the US Copyright Office, to be filed under separate cover on an external hard drive with the Court due to size of the files); Exhibit D (a copy of all the US Copyright Registrations filed under separate cover on an external hard drive with the Court due to size of the files), and Exhibit E (a Chart that provides a reference number to each registered Photo (PXXXXX), a file name for each registered Photo, a US Copyright registration number assigned by the US Copyright office, a US Copyright registration date, and a first publication date of each Photo).

89.     An actual, present and justiciable controversy has arisen between Plaintiff and AFP regarding copyright ownership of all 34,500 Photos.  Presuming all 34,500 Photos or some of the Photos (at minimum the Stringer Photos) are Plaintiff's copyright, he has standing to proceed with his some or all of his copyright infringements claims alleged in Count 2, his CMI

claims alleged in Count 3, his Contributory Copyright Infringement and CMI violation claims in

Count 4, and his Vicarious Liability for Copyright Infringement and CMI violations in Count 5.

90.     Plaintiff seeks a declaratory judgment and relief from this Court that he is the sole

copyright owner of the Photos and for a permanent injunction against AFP and Getty Images

refraining them for present and future infringements of Plaintiff's photos.

91.     Plaintiff also seeks an order requiring Defendants to produce a copy of each Photo

(without an AFP or Getty Images watermark) that Plaintiff does not have in his possession so

that Plaintiff may elect to register each Photo that Plaintiff has not previously registered with the

U.S. Copyright Office. Further, Plaintiff requests that the Court grant him relief and permit him,

at his cost and his elective choice, to pursue all available damages under the law had he been

able to register each of the 25,843 photos that AFP has wrongly withheld. In other words, AFP

prevented him from registering these 25,843 Photos and frustrated his ability to realize the full

economic value of his Photos.

### COUNT 2: INFRINGEMENT OF COPYRIGHTS (17 U.S.C. §§ 106, 501.)

### (Against All Defendants)

92.     Plaintiff incorporates herein by reference each and every allegation contained in

each paragraph above.

93.     Plaintiff is, and at all relevant times has been, the sole copyright owner of the

Photos he validly registered with the U.S. Copyright Office. The deposit copy files used to

register these Photos are included here in **Exhibit C**, and copies of the registration certificates

themselves are included in **Exhibit D**.

94.     Plaintiff attaches as **Exhibit E**, a chart which acts as a simple reference tool for all

registered Photos. This chart includes columns for the following data: a unique number for each

registered Photo (P00001 as the first the first photo and P08657 as the last photo); the Photo File

Archive ID, which is the digital file name for each registered Photo (deposit copies of which are

included as Exhibit C); a U.S. Copyright registration number assigned by the U.S. Copyright

office (copies of which are included as Exhibit D); the Effective Date of the U.S. Copyright

Registration; and the date of first publication of each Photo as found on its corresponding U.S.

Copyright Registration.

95.     Upon the Court ordering Defendants to produce a copy of each photo that was not

registered with the U.S. Copyright Office (25,843 photos), Plaintiff may seek leave of court to

register those photos and amend his complaint to include them for statutory damages, if

applicable. If any or all of these photos are considered foreign works, registration may be

unnecessary to proceed with claims alleged herein for Plaintiff to obtain actual damages.

96.     To support an award of statutory damages for the infringement of any Stringer

Photo taking place after the Effective Date listed on its certificate of registration, Plaintiff

attaches as **Exhibit F**, evidence of infringing uses by third parties (presumably as licensed by

AFP and/or Getty Images) known to him at the time of filing. This exhibit will be filed under

separate cover due to size file limits. Plaintiff believes that there are at least 14 instances of AFP

and/or Getty licensing Stringer Photos to a third party after Plaintiff had both registered the

Photo and terminated AFP/Getty's right to do so. Plaintiff attaches as **Exhibit F1**, a reference

chart that includes a unique number for each registered Photo (which corresponds to the PXXXX

identifying number from the first column in Exhibit E), as well that Photo's: Photo Archive File

ID; U.S. Copyright registration number, Effective Date of registration; infringement date; and

date of first publication. Discovery with AFP and Getty should reveal the entire universe of

licenses to third parties of any additional registered Photos infringed after January 1, 2019.

97.     To support an award of statutory damages for infringement of any Staffer Photo taking place after the Effective Date listed on its certificate of registration, Plaintiff attaches as **Exhibit G**, evidence of infringements by third parties (presumably as licensed by AFP and/or Getty Images) known to him at the time of filing. This exhibit will be filed under separate cover due to size file limits. Plaintiff believes that there are least 39 instances of AFP and/or Getty licensing Staffer Photos to a third party after had both registered the Photo and terminated AFP/Getty's right to do so. Plaintiff attaches as **Exhibit G1**, a reference chart that includes a unique number for each registered Photo (which corresponds to the PXXXX identifying number from the first column in Exhibit E), as well as that Photo's: Photo Archive File ID; U.S. Copyright registration number; Effective Date of registration; infringement date; and date of first publication. Discovery with AFP and Getty should reveal the entire universe of licenses to third parties of any additional registered Photos infringed after January 1, 2019.

98.     Plaintiff attaches as **Exhibit H**, evidence of the infringements of all the Photos being displayed on Getty and/or AFP's licensing websites from April 1, 2019, until August 2020, as well as on various merchandising sites that sell products incorporating or containing Plaintiff's Photos -- despite Plaintiff's April 17, 2019 takedown notice, which AFP acknowledges receiving and is referenced in the settlement agreement (Exhibit B). In August 2020, most of the Photos were taken down by Defendants after receiving Plaintiff's third cease-and-desist takedown notice. Exhibit H will be filed under separate cover due to size file limits. Plaintiff may elect to seek actual damages for these 34,500 infringements (10,262 Stringer Photos and 24,238 Staffer Photos).

99.     Despite multiple cease-and-desist takedown notices over a period of nearly three years, including a notice that AFP and Getty received and acknowledged in November 2021,

Plaintiff attaches as **Exhibit I,** evidence of ongoing infringements of Plaintiff's registered Photos by Defendants.

100.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, create derivative works from, distribute, and display his Copyrighted Photos under 17 U.S.C. §§ 106 (1), (2), (3), and (5).

101.    After April 17, 2019, Defendant AFP, without the permission or consent of Plaintiff, distributed his Copyrighted Photos (both the Stringer Photos and the Staffer Photos) for display and licensing to Defendant Getty, who, in turn, likely displayed and distributed both sets of Photos on various licensing websites that Getty and/or AFP owns, controls, and has access to through third-party agreements and affiliates. Defendants also likely made the Photos available for distribution to third parties through Defendants' websites, and shared revenue with their third- party websites from licensing fees and other benefits.

102.    Defendants have violated Plaintiff's exclusive rights of reproduction, derivative work creation, display, copying, and distribution of his Photos, including both the Stringer Photos and the Staffer Photos.

103.    Defendant AFP never sought permission nor paid a separate licensing fee (aside from the initial payment for the 30-day exclusive license) for additional licensing rights on Defendants' website(s), despite Defendants both operating in the European Union and the US, and knowing that photographers in the EU and Portugal control the exclusive economic rights of their photos they create once the 30-day exclusivity period expires.

104.    Plaintiff is informed and believes that the uses found in Exhibits F, G, H and I of infringement have been willful or reckless, in total disregard of and with indifference to the rights to Plaintiff's copyrights and exclusive rights under copyright.

105.    As a result of Defendants' infringements of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to actual damages (loss of a licensing fees or equivalent, plus any profits Defendants made plus other nonexclusive factors) pursuant to 17 U.S.C. § 504(b) for Defendants' infringement for the uses of the Copyrighted Photos.

106.    Alternatively, Plaintiff seeks statutory damages pursuant to 17 U.S.C. § 504(c) for up to $150,000 for the Photos that were registered before the alleged infringements occurred in Exhibits F, G and I.

107.    In the event any Photos are still published by or associated with Defendants, Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to permanent injunctive relief prohibiting Defendants from further infringing Plaintiff's copyrights and ordering Defendants to destroy all copies of the Photos made or used in violation of Plaintiff's exclusive rights and to remove the Photos from any site that Defendants control or own or have access to such as the third-party licensing sites.

108.    As a direct and proximate result of Defendants' infringements of Plaintiff's exclusive copyright in his Photos, Plaintiff has been damaged.

109.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff irreparable injury that cannot fully be compensated.

110.    Plaintiff is also entitled to his reasonable attorney's fees and costs for the statutory damages claims.

///

///

## COUNT 3: (ALTERATION AND/OR ADDITION OF FALSE COPYRIGHT

## MANAGEMENT INFORMATION (17 U.S.C. §§ 1202 and 1203 et. seq.)

### (Against All Defendants)

111.    Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

112.    The authentic digital copy versions of the Photos published or displayed by Defendants on Defendants' websites and various third-party sites contained copyright management information protected under 17 U.S.C. § 1202, with such text referencing the author of each photo.

113.    Defendants are alleged to have violated 17 U.S.C. § 1202 which reads in pertinent part: a) False copyright management information. --No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement -- (1) **provide copyright management information that is false**, or (2) distribute or import for distribution copyright management information that is false.

114.    When AFP uploaded and/or transferred the digital files of Plaintiff's Photos (both the Stringer Photos and the Staffer Photos) to Defendant Getty, upon information and belief, Getty and/or AFP altered Plaintiff's copyright management information by adding a Getty and/or AFP watermark, which they knew to be or had a reasonable basis to know to be false information in violation of 17 U.S.C. § 1202(a). It is unclear exactly how many CMI violations occurred but at minimum it appears likely that there are as many as 34,500 violations, more likely than not for each and every display of the Photos that contained the AFP and/or Getty watermark, despite Plaintiff's takedown notices.

115.    Defendants' addition of the aforementioned false copyright management information on the Copyrighted Photo(s) was made without the knowledge or consent of Plaintiff.

116.    Upon information and belief, the addition of false information of the aforementioned copyright management information to the Copyrighted Photos was made by Defendants who each knowingly provided false copyright information and Defendants did so with the intent to induce, enable, and/or facilitate infringement of Plaintiff's Photos (at minimum the Stringer Photos).

117.    Defendants induced, enabled, and/or facilitated the infringements of the Photos without proper accurate and true attribution because Defendants knew that they did not have consent from Plaintiff to publish and display the Photos for licensing (both editorial and commercial licensing) after Plaintiff was terminated in April 2019 from AFP and when he gave them notice to cease and desist from using his Photos.

118.    Upon information and belief, Defendants distributed, imported for distribution, copies of works, and with respect to civil remedies under Section 1203, having reasonable grounds to know, that the addition and/or alteration of the copyright management information would induce, enable, and/or facilitate an infringement of any right under Section 1202.

119.    Upon information and belief, all potential licensees of Plaintiff's Photos would likely not seek a license from Plaintiff, but instead seek a license from Getty and/or AFP based on the Getty and/or AFP watermark, which is alleged to be the false copyright management information.

120.    As a result of Defendants' wrongful conduct alleged herein, pursuant to 17 U.S.C. § 1203(c)(2), Plaintiff is entitled to recover from Defendants the actual damages he sustained,

and will sustain, along with any profits and advantages obtained by Defendant due to their violation of 17 U.S.C. § 1202, including attorney's fees and costs.

121.    Alternatively, Plaintiff may elect to recover from Defendants statutory damages pursuant to 17 U.S.C. § 1203(c)(3) for each violation of 17 U.S.C. § 1202 of a minimum of $2,500 per violation and maximum of $25,000 per violation. See also *Sheldon v. Plot Commerce, No.* 15CV5885CBACLP, 2016 WL 5107072, (E.D.N.Y. Aug. 26, 2016), report and recommendation adopted, No. 15CV5885CBACLP, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) that defines each removal/deletion/addition as a separate violation.

122.    Any potential licensee of the Photos would be confused as to whom they should obtain a license from, and each potential licensee would more likely than not seek a license from Getty or AFP.

123.    In other words, the 34,500-plus CMI violations represent a total usurpation of the licensing opportunities for Plaintiff's Photos.

124.    Plaintiff alleges that there are as many as 34,500 separate CMI violations. This represents a range from $87,500,000 to $875,000,000 in damages for the CMI violations.

125.    Notably, Plaintiff never performed services for Getty Images or did any assignments for a "Pool" for Getty Images, which appears on its face as a knowingly false watermark.

126.    Here are two such examples of the 34,500 Photos where the "gettyimages" or "gettyimages Pool" watermark was added and Plaintiff alleges illustrates how each and every one of Plaintiff's Photos was likely altered or false CMI was added:





127.    In the event that any of Plaintiff's Photos are still published, displayed or found to

be with Defendants using the false copyright management information (AFP or Getty watermark

for instance), the conduct of Defendants has caused, may still be causing, and will continue to

cause Plaintiff irreparable injury that cannot fully be compensated or measured in money unless

enjoined and restrained by this Court.

128.    Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright and ordering Defendants to destroy all copies of images made or used in violation of Plaintiff's exclusive rights and to remove the false CMI and the Photos from any website that Defendants control, operate, and/or own.

129.    Plaintiff is entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

## COUNT 4: (CONTRIBUTORY COPYRIGHT INFRINGEMENT AND CONTRIBUTORY ADDITION OF FALSE COPYRIGHT MANAGEMENT INFORMATION)

### (Against Defendant AFP)

130.    Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

131.    AFP's agent, Getty Images, has infringed on Plaintiff's rights in the copyrighted Photos by displaying, distributing, attempting to license, adding false CMI (such as a "gettyimages" watermark) and reproducing, or purporting to authorize the reproduction, creation of derivative works from, distribution, or display of such copyrighted works, all without authorization. AFP's agent, Getty, is therefore directly infringing Plaintiff's exclusive rights of reproduction, preparation of derivative works from, distribution, and display under U.S.C. §§ 106 (1), (2), (3), and (5).

132.    Defendant AFP is liable as a contributory copyright infringer for the infringing acts of Getty Images for the false CMI to each of the 34,500 Photos. Defendant AFP enabled, induced, facilitated, and materially contributed to each act of infringement by Getty Images and its affiliates.

133.     Defendant AFP has actual and constructive knowledge that Getty Images, as its licensing agency and its affiliates (as any other sublicensing agencies of AFP such as Jiji Photos) to did copy, distribute, publicly perform, attempt to license (and use false CMI) and publicly display Plaintiff's copyrighted Photos. Acting with actual and constructive knowledge, Defendant AFP enabled, facilitated and materially contributed to Getty Images, its affiliates and other licensing agencies such as Jiji Photo to commit copyright infringement, which could not occur without Defendant AFP's enablement. Alternatively, Plaintiff alleges that Getty Images has independent liability.

134.     Defendant AFP's acts of contributing to direct infringement by Getty Images has been willful, intentional, purposeful, and in total disregard of and indifferent to the rights of Plaintiff.

135.     As a direct and proximate result of Defendant AFP's contributory infringement of Plaintiff's exclusive copyrights, Plaintiff has been damaged.

136.     Defendant AFP's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated.

137.     Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant to never again infringe on Plaintiff's copyrights.

138.     Plaintiff is further entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

///

///

///

///

## COUNT 5: (VICARIOUS COPYRIGHT INFRINGEMENT AND COPYRIGHT MANAGEMENT INFORMATION VIOLATIONS)

### (Against Defendant AFP)

139.    Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above.

140.    Defendant AFP's agent, Getty Images and its affiliates, have infringed and are infringing Plaintiff' rights in his copyrighted photos, by publicly performing, displaying, distributing, attempting to license, adding false CMI (i.e., the "gettyimages" watermark) reproducing, or purporting to authorize the public performance, display, distribution, or reproduction of such copyrighted works, all without authorization from Plaintiff. AFP's agent, Getty Images, is therefore directly infringing Plaintiff's exclusive rights of reproduction, preparation of derivative works from, distribution, and display under U.S.C. §§ 106(1), (2), (3), and (5).

141.    Defendant AFP is vicariously liable for the infringing acts of AFP's agent, Getty Images and its affiliates.

142.    Upon information and belief, Defendant AFP has both the right and the ability to supervise, monitor, track and enforce Getty Images' and its affiliates' infringing conduct and to prevent Getty Images and its affiliates from infringing Plaintiff's copyrighted works or using false CMI.

143.    Defendant AFP significantly and directly benefits from the infringements by Getty Images. Defendant derives substantial revenue tied directly to the use of Plaintiff's Photos.

144.    Defendant Getty Images' infringements have also been willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff.

145.   Defendant Getty Images' addition of false copyright information such as a "gettyimages" or "gettyimages Pool" watermark was committed with a reasonable basis to know that the use of the watermark would facilitate infringements of Plaintiff's Photos and that is false that Plaintiff performed services for Getty.

146.   As a direct and proximate result of Defendant Getty Images' infringements of Plaintiff's exclusive copyrights, Plaintiff has been damaged.

147.   Defendant Getty Images' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated.

148.   Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction requiring Defendant Getty to never infringe or add false CMI to Plaintiff's copyrights.

149.   Plaintiff is further entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

## VI. DAMAGES

150.   Defendants' conduct caused Plaintiff actual damages and/or each are liable for statutory damages of up to $30,000.00 for each separate infringement of Plaintiff's Photos that that took place after Plaintiff had both registered the Photo and revoked Defendants' permission to use it (totaling at least 53 Photos, 14 Stringer and 39 Staffer). Alternatively, Defendants are liable for up to $150,000.00 for the willful infringement of each of those 53 Photos pursuant to 17 U.S.C. § 504. Alternatively, Plaintiff may elect to seek actual damages and profits earned by Defendants related to Defendants' infringement of the 53 Photos.

151.   Defendants' conduct caused actual damages for the Stringer Photos (10,262) and the Staffer Photos (24,238) based on an amount of factors such as a fair market value licensing fee (such as what Getty is attempting to license each Photo for), the value of Plaintiff's archive

as a whole or what Getty or another licensing agency would pay, profits Getty and AFP earned

from having the photos in Getty's archive or any other acceptable means of proving damages.

152.     Defendants' conduct caused actual damages from the 34,500 CMI violations, or

alternatively statutory of damages of a minimum of $2,500 or a maximum of $25,000 per

violation (the addition of false CMI), plus attorneys' fees and costs.

## VII. JURY TRIAL DEMANDED

153.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of

all the claims asserted in this Complaint so triable.

## VIII. RELIEF REQUESTED

154.     WHEREFORE, Plaintiff respectfully requests and prays that the Court enter

judgment on his behalf adjudging and decreeing that:

a.     For declaratory relief under the Federal Copyright Act and for an injunction

providing:

"Plaintiff Leong Francisco Paulo is the sole copyright owner of the Photos he captured

(34,500) from 2005 to 2018, and owns the exclusive bundle of rights under the US Copyright

Act.

The Court further finds that AFP and Getty shall produce a copy of each Photo to

Plaintiff so that Plaintiff may elect to register each of the Photos with US Copyright Office that

have not been registered, and that Plaintiff may enjoy the full bundle of rights under the US

Copyright Act.

The Court further finds that AFP and Getty shall be and hereby are enjoined from directly

or indirectly infringing Plaintiff's rights in the Copyrighted Photos under U.S. federal or state

law or under any foreign jurisdiction that is a signatory to the Berne Convention, and AFP and

Getty are enjoined from distributing (i.e. causing to be displayed) or attempting to license any of Plaintiff's copyrighted Photos, or to making any of Plaintiff's Photos available for distribution to the public, except pursuant to a lawful license or with the express written authority of Plaintiff.

After AFP has provided Plaintiff with copies of all Photos he has previously requested from them, Defendants also shall destroy all copies of Plaintiff's Photos that Defendants have downloaded onto any computer hard drive or server that Defendants have control or ownership interest in after producing a copy to Plaintiff."

b.      For Plaintiff to be awarded either: (i) Plaintiff's actual damages and Defendants' profits, gains, or advantages of any kind attributable to Defendants' infringement of Plaintiff's copyrighted Photos; or (ii) alternatively, statutory damages of up to $30,000.00 per infringement or up to $150,000.00 for each instance for as many as 53 separate willful infringements of Plaintiff's Copyrighted Photos pursuant to 17 U.S.C. § 504.

c.      For Plaintiff to be awarded from Defendants: (i) actual damages he sustained, and will sustain, along with any profits and advantages obtained by Defendants due to their violation of 17 U.S.C. § 1202 (Copyright Management Information), including attorney's fees and costs, or alternatively, statutory damages pursuant to 17 U.S.C. § 1203(c)(3) for each violation of 17 U.S.C. § 1202 of a minimum of $2,500 per violation (34,500 Photos x $2,500 = $86,250,000) or a maximum of $25,000 per violation (34,500 Photos x $25,000 = $862,500,000).

d.      For Defendants to be required to account for all profits, income, receipts, or other benefits derived by Defendants as a result of their unlawful conduct.

e.      For Plaintiff's costs and expenses in this action, including all reasonable attorney's fees incurred herein, pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1201 et. seq.

      f.      For Plaintiff to be awarded pre-judgment interest from the time of the

infringements.

      g.      For such other and further relief as the Court may deem just and proper.

Dated: December 30, 2021.

Respectfully submitted,

**DUNCAN FIRM, P.A.**

By: /s/ James H. Bartolomei
James H. Bartolomei Esq.
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600 phone
james@duncanfirm.com

and

**HOBEN LAW**
Bryan D. Hoben, Esq.
1112 Main Street
Peekskill, New York 10566
347-855-4008
bryan@hobenlaw.com

*Attorneys for Plaintiff Leong Francisco Paulo*