UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEONG FRANCISCO PAULO,

                               Plaintiff,

              -against-

AGENCE FRANCE-PRESSE, et al.,

                               Defendants.

1:21-cv-11209 (JLR) (SLC)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Leong Francisco Paulo ("Plaintiff" or "Leong"), a Portuguese photojournalist, asserts two counts alleging that Agence France-Presse ("AFP"), along with Getty Images (US), Inc. ("Getty US") and Getty Images, Inc. (the "Getty Defendants" and, together with AFP, "Defendants"), have used thousands of his photographs constituting copyright infringement and violation of copyright management information ("CMI") under the Copyright Act, 17 U.S.C §§ 501, 1202, *et seq.* (the "Act"). ECF No. 52 (the "FAC") ¶¶ 1, 6-8, 232-260. Before the Court is the Report and Recommendation issued by Magistrate Judge Sarah L. Cave (the "Magistrate Judge"), dated January 19, 2023. ECF No. 90 ("R&R"). The Magistrate Judge recommends that Defendants' motion to dismiss be granted and the action be conditionally dismissed pursuant to the doctrine of *forum non conveniens* and, in the alternative, that the claims against AFP be dismissed for lack of personal jurisdiction. *Id*. For the reasons set forth below, the Court adopts the R&R in full and GRANTS Defendants' motion to dismiss.

## BACKGROUND

The R&R sets forth in detail the factual background and procedural history of this case. *See* R&R at 1-22. The Court incorporates that portion of the R&R herein, refers the reader to the R&R for a more comprehensive background, and provides a shorter statement of the case below.

As a snapshot, and as the Magistrate Judge aptly stated, "[t]his case has little to do with New York and a lot to do with Portugal.  At the core of this case are the ownership rights of a Portuguese photographer, under Portuguese law, with respect to photographs he took in Portugal and around the world – but not in the United States."  R&R at 46.[1]

## I.    The Parties

Plaintiff Leong[2] is a "Portuguese citizen and resident of Lisbon, Portugal."  FAC ¶ 6.  He "is an accomplished and skilled Portuguese photojournalist with over 20 years of experience covering global news" on an array of subjects.  *Id*. ¶ 6; *see id.* ¶ 26.  Leong has been "registered with Portugal's Carteira Profissional de Jornalista (Journalists' Professional License Committee)" since 2005.  *Id*. ¶ 27.  He has taken photographs of disputes in Ukraine, Syria, and Libya, among other places, *id*. ¶ 30, but does not allege that he has taken photographs in the United States, R&R at 3.

Defendant AFP "is a French state-owned corporation, with its main North America location" in Washington, D.C. and a secondary office in New York.  FAC ¶ 7.  As a "French global news agency headquartered in Paris, France," AFP has a "worldwide audience" and over 2,400 staff and news bureaus in 160 countries and 201 locations.  *Id*. ¶¶ 7, 32.  AFP "develops its editorial content through 'stringers' (freelancers or independent contractors) and 'staffers' (editorial employees) that produce the written and audiovisual content made available through the AFP Wire Service, a subscription service that allows subscribers (primarily news outlets) to

---

[1] Unless otherwise noted, the facts stated herein are "taken from the amended complaint, the allegations of which [the Court] accept[s] as true, as well as from other materials" referenced in or attached to the amended complaint.  *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 176 (2d Cir. 2013); *see DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010).

[2] This Court, like the FAC and R&R, refers to Plaintiff as "Leong."  *See* R&R at 2 n.3.

access content that is often critical to the reporting of global news." *Id*. ¶ 34.  It also makes editorial content available through other means, including by licensing photographs through AFP Forum, where it then distributes photographs to subscribers. *Id*. ¶¶ 35-36.

The FAC alleges that the Getty Defendants "are Delaware corporations, each having their principal place of business" in Seattle, Washington and satellite offices in New York. *Id*. ¶ 8.  In connection with the instant motion, Getty US states that it is a New York corporation and Leong now adopts that fact as his own, despite the FAC's contrary allegation. *See* R&R at 4.  AFP and the Getty Defendants have "an ongoing partnership" through which AFP "licenses content through [the] Getty Defendants' internet platform." FAC ¶ 38.

## II.    Leong's Relationship with AFP in Portugal

Under his professional title registered in Portugal, Leong "captured, curated, and licensed a total of 34,716 photographs to AFP" between February 20, 2005 and November 30, 2018 (the "Leong Photographs"). *Id*. ¶ 42.  After receiving a photograph from Leong, AFP would distribute the photograph through the AFP Wire Service, add it to the AFP Forum database, and share it with the Getty Defendants. *Id*. ¶ 45.  The FAC further alleges that AFP removed Leong's metadata from the photographs and added the "AFP" icon. *Id*.

The Leong Photographs were created during two periods: (i) from February 20, 2005 through October 31, 2010, when Leong was an AFP freelance photojournalist (the "Stringer Period"); and (ii) from November 1, 2010 through November 30, 2018, when Leong was an AFP employee (the "Staffer Period"). *Id*. ¶ 46.  During both periods, Leong believed that he owned the Leong Photographs, and he "authorized and approved of AFP's commercialization of the Leong Photographs, as well as the attribution of AFP and [the] Getty Defendants . . . on such photographs, across all of AFP's various avenues of commercial exploitation . . . ." *Id*. ¶¶ 47-48.

Leong has since obtained 21 U.S. Copyright Registrations for 8,657 photographs. *Id*. ¶ 47; *see* ECF No. 52-29 at 2.

During the Stringer Period, Leong "captured, curated, and licensed over 10,000 photographs to AFP" without a written contract. FAC ¶ 49. The FAC asserts that, under the Portuguese Code of Copyright (the "Portuguese Code of Copyright"), "the copyrights in the [photographs] captured by Leong during the Stringer Period were owned by Leong." *Id*. ¶ 55.

The Staffer Period began in 2010 when Leong entered a written Portuguese-language contract with AFP (the "2010 Agreement"). *Id*. ¶¶ 56, 59. The 2010 Agreement is governed by Portuguese law. *Id*. ¶¶ 65-66. Clause 14 of the agreement is a choice-of-law provision that expressly selects Portuguese law "as the law applicable to the 2010 Agreement." *Id*. ¶ 66. The applicable law includes the Portuguese Code of Copyright and the "Journalist Statute" in Portugal (the "Portuguese Statute"). *Id*. ¶ 67. As an AFP staffer, Leong also "became eligible under Portuguese law" for certain employee benefits at this time. *Id*. ¶ 57 & n.2.

During the Staffer Period, Leong created and licensed over 23,000 photographs to AFP for use and commercial exploitation "under the express terms of Clause 7 of the 2010 Agreement." *Id*. ¶ 58; *see also id.* ¶ 59 (noting that Clause 7 "govern[ed] AFP's rights to use and exploit Leong's photographs"). Clause 7, translated in the FAC from Portuguese to English, provided that "[t]he present encumbrance is valid for the entire time of the literary and artistic protection and for the whole world." *Id*. ¶ 59.[3] The FAC asserts that Clause 7 did not assign or completely transfer ownership of Leong's copyrights in the Leong Photographs because it failed

---

[3] Defendants provided a certified translation of Clause 7, which states that "[t]his assignment is valid for the entire duration of the literary and artistic protection and on a global basis." ECF No. 56-1 ¶ 7; *see* R&R at 6 n.4. For purposes of deciding the instant motion, and as the Magistrate Judge noted below, the Court need not resolve which parties' translation is correct.

to satisfy Portuguese legal requirements, including under Article 7B(1) of the Portuguese Statute, Article 7-B(2) of the Portuguese Statute, Article 44 of the Portuguese Code of Copyright, as well as under Article 11 of the Portuguese Code of Copyright because "terminology used in Portuguese law to describe ownership (i.e., "titularidade") is absent."  FAC ¶¶ 60-61.  The FAC further asserts that a transfer of copyright in the 2010 Agreement was inconsistent with industry practice.  *Id*. ¶ 62.  The FAC concludes that, under "the Portuguese copyright law provisions applicable to the 2010 Agreement," "the only plausible and reasonable reading of Clause 7 of the 2010 Agreement is that such clause granted AFP an exclusive license to commercialize and exploit the Leong Photographs . . . and to include attribution of AFP and [the] Getty Defendants . . . on and in connection with such photographs."  *Id*. ¶ 70.

In sum, according to Leong, the Portuguese Code of Copyright and Portuguese Statute "govern copyright issues arising under the 2010 Agreement."  *Id*. ¶ 68.  Additionally, under the forum selection clause ("Clause 15") in the 2010 Agreement, "[a]ny litigation arising from" the 2010 Agreement "will fall under the jurisdiction of the Lisbon District Court, with expressed resignation of any other."  ECF No. 1-2 at 7 ¶ 15.

Leong's employment relationship with AFP terminated on March 29, 2019, when AFP "wrongfully terminated" his employment.  FAC ¶ 88.  The FAC asserts that the termination "constituted a willful and material breach of the 2010 Agreement" under Portuguese law, so "as to strongly tend to defeat the object of the parties . . . and giv[e] rise to a right of recission" that "created a legal basis for Leong to terminate AFP's license under Clause 7 of the 2010 Agreement."  *Id*. ¶¶ 102, 103, 105.

### III.    The First Portuguese Proceeding

On April 8, 2019, Leong filed a case alleging wrongful termination by AFP in "Portuguese labor court."  FAC ¶ 89 (the "First Portuguese Proceeding").  On April 17, 2019, Leong sent an email to AFP requesting that AFP cease and desist "from disclosing and/or publishing and/or economically exploit[ing]" the Leong Photographs.  *Id*. ¶ 90; *see id.* ¶ 106 (the "April 17 Email").  After considering testimony from fact witnesses and documentary evidence, the Portuguese court enjoined Leong's termination because it found the termination "likely wrongful."  *Id*. ¶ 91.

On July 4, 2019, Leong and AFP entered into a settlement agreement, in which AFP agreed to pay Leong to settle his labor claims in exchange for dismissal of the First Portuguese Proceeding.  *Id*. ¶ 131.  The settlement agreement "carved out Leong's copyright claims against AFP" under Clause 7 of the 2010 Agreement.  *Id*.; *see* ECF No. 1-3 (translated version of settlement agreement).  The FAC alleges that, around this time, AFP circulated a "kill notice" for the Leong Photographs to its partners, licensees, and customers, or "otherwise notified those third parties of Leong's claim of infringement regarding the Leong Photographs."  FAC ¶ 134.

### IV.    The Second Portuguese Proceeding

On December 27, 2019, Leong filed a second case against AFP in the District Court of Lisbon (the "Lisbon District Court") challenging the validity of Clause 7 of the 2010 Agreement.  *Id*. ¶ 136; *see* ECF No. 40-8.  In that suit, Leong alleged that, after he was terminated, AFP "continued to sell the [Leong Photographs], across the whole world and for all purposes" without Leong's "authorization."  ECF No. 40-8 at 13 ¶¶ 23-24.  As the Magistrate Judge accurately described in the R&R:

> Leong alleged that he "never granted, by any means or form, express or implicit authorization for AFP to use his photographs,

without limits to their use and in infringement of the law on this matter, that is, in addition to making them available to the public thirty days after publication on the AFP Forum, their offering as an online service, or for non-journalistic purposes." Leong argued that the Leong Photographs were "considered works protected under the Portuguese Code . . . and Related Rights and in this act," and that he did not "authorize AFP, in fact and in law, within the scope of his employment contract, to reproduce his photographs beyond the limits and purposes provided for in the law governing his profession as a journalist and outside the scope of his employment contract and/or journalistic activity for" AFP.

R&R at 10 (internal citations and brackets omitted). In the Second Portuguese Proceeding, Leong further alleged that AFP's "marketing" of the Leong Photographs constituted "infringement" and he sought, as the Magistrate Judge stated below: "(i) a declaration that Clause 7 was 'null and void'; (ii) an order barring AFP from 'using, exploiting, reproducing, or selling . . .' the Leong Photographs; (iii) grant Leong access to all photographs in AFP's 'database'; (iv) award per diem damages plus a penalty of €500.00 per day, per photograph; and (v) an award of court fees and expenses." *Id*. at 10-11 (internal citations and brackets omitted). The FAC also alleges that, if AFP had not already done so, it circulated a "kill notice" at the time of the Second Portuguese Proceeding. FAC ¶ 138.

On April 26, 2022, a bench trial was scheduled to begin in the Second Portuguese Proceeding. ECF No. 31 ¶ 18. The issues to be tried at that trial included: (i) the validity of Clause 7; and (ii) the copyright protection and rights regarding Leong's photographs taken during the Staffer Period. *Id*. ¶ 19. Less than a month before trial, on April 4, 2022, based on Leong's submission of a notice of withdrawal, the Lisbon District Court dismissed the Second Portuguese Proceeding and cancelled the trial. *See* R&R at 11 (citing ECF Nos. 38-1 at 4, 40-1 at 6).

### V.       Alleged Infringement

The FAC alleges that, because the April 17 Email "repudiated and rescinded the 2010 Agreement and terminated AFP's license under Clause 7 . . . AFP's use of the Leong Photographs after April 17, 2019 – and any other third-party use of the Leong Photographs authorized by AFP as of that date – was unauthorized and infringed Leong's copyrights in the Leong Photographs."  FAC ¶ 108.  It alleges that "AFP continued reproducing, distributing, publicly displaying, marketing, selling, creating derivative works from, holding out for license, and otherwise commercially exploiting the Leong Photographs, which amounted to infringement of the Leong Photographs."  *Id*. ¶ 109.  The FAC further alleges that AFP "continued its use of the 'AFP' identifier in connection with the Leong Photographs on AFP Forum," and that "this false CMI concealed AFP's infringement and induced others to 'license' the Leong Photographs from AFP (which lacked the right to license them), thereby inducing those third parties to infringe Leong's copyrights in the Leong Photographs."  *Id*. ¶¶ 112, 113; *see also id.* ¶ 115. Additionally, AFP continued to license the Leong Photographs to the Getty Defendants and commercialize them through Media Storehouse, which "constituted willful infringement of Leong's copyrights in the Leong Photographs."  *Id*. ¶¶ 111, 116, 118; *see also id.* ¶¶ 117, 119-122.

With respect to the Getty Defendants, the FAC alleges that they continued their partnership with AFP, in which they offered the Leong Photographs for third-party licensing, after the April 17 Email.  *Id*. ¶¶ 123-128, 142-144.  The FAC alleges that, because this conduct continued after Leong terminated "AFP's license" to use and commercialize the Leong Photographs, the Getty Defendants' use of such photographs after April 17, 2019 "willfully infringed Leong's copyrights in the Leong Photographs."  *Id*. ¶ 126.  On July 24, 2020, Leong's

counsel sent the Getty Defendants a notice of investigation of copyright claims with respect to eight of the Leong Photographs, yet the Getty Defendants continued to use the photographs. *Id*. ¶¶ 140, 145-151.

The FAC names John Does 1-100 and XYZ Corporations 1-100 as "nominal defendants," and lists various companies as non-party "Downstream Infringers," including Bloomberg News, BNA, NYP Holdings, Inc., Heavy, Inc., Forbes Media LLC, Breitbart News Network, LLC, Media Storehouse, Ltd., The New York Times Company, Dotdash Meredith, The Athletic Media Company, The Arena Group, and Buzzfeed, Inc. (together, the "Downstream Infringers"). *Id*. ¶¶ 9-22; *see* R&R at 14-20.[4]  The FAC alleges that agreements between AFP and the Getty Defendants require, among other things, that AFP notify the Getty Defendants "to immediately cease using works that are subject to a claim of infringement." FAC ¶ 155.  In turn, the Getty Defendants' content license agreements require the Getty Defendants to notify licensees of content that may be subject to a claim of infringement, and the licensees to, among other things, immediately cease their use of such content. *Id*. ¶ 154.  Despite the Getty Defendants' obligation to notify the licensees, the Downstream Infringers continued to use the Leong Photographs. *Id*. ¶ 157.  Accordingly, the FAC alleges that AFP and the Getty Defendants are contributorily and vicariously liable for such downstream infringement because they knew or had reason to know of it.  R&R at 15 (citing FAC ¶¶ 163-164, 172-173, 178-179, 184-185, 194-195, 200-201, 206-207, 212-213, 218-219, 224-225, 230-231).

---

[4] The R&R accurately provides a more comprehensive recitation of facts with respect to the Downstream Infringers, to which neither party objects. *See* R&R at 14-20.

## VI.     Procedural History

The Magistrate Judge set forth the procedural history in the R&R, which this Court incorporates herein.  *See* R&R at 21-22.  In the R&R, the Magistrate Judge recommends that Defendants' motion to dismiss be granted and the action be dismissed, subject to certain conditions, on grounds of *forum non conveniens*.  *Id*. at 67.  In the alternative, the Magistrate Judge recommends that the claims against AFP be dismissed for lack of personal jurisdiction. *Id*.  After the R&R was issued, Leong filed an objection on January 31, 2023, arguing that the R&R should not be adopted and the motion to dismiss should be denied.  ECF No. 91 ("Objection" or "Obj.").  Defendants filed their response on February 14, 2023, arguing that the R&R should be adopted in full.  ECF No. 92 ("Response" or "Resp.").  Defendants also filed the 72-page transcript of the parties' oral argument held on December 20, 2022.  *See* ECF Nos. 93, 93-1.[5]

## STANDARD OF REVIEW

With respect to dispositive motions, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3).  A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error."

---

[5] Leong's request for oral argument, *see* ECF No. 94, which Defendants oppose, *see* ECF No. 95, is denied because the parties submitted extensive briefing responding to the R&R, along with opening, opposition, reply, and supplemental briefs on the motion to dismiss; the Magistrate Judge already held an exhaustive oral argument on the instant motion; and further argument would not assist the Court.  *See, e.g.*, *AD/SAT v. AP*, 181 F.3d 216, 226 (2d Cir. 1999) (holding that "a district court's decision whether to permit oral argument rests within its discretion"); *see generally* J. Rochon Individual Rules of Prac. in Civ. Cases 3(G).

*Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a 'meaningless dress rehearsal.' . . . 'The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge.'" *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting *Vega v. Artuz*, No. 97-cv-03775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (internal citation and quotation marks omitted); *see United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to report and recommendation).

## DISCUSSION

For the reasons set forth below, the Court adopts the conclusions of the R&R and dismisses this case based on *forum non conveniens* and, in the alternative, lack of personal jurisdiction as to AFP. The Court has conducted a *de novo* review, and finds that the R&R is supported by the record and the law.

### I.   *Forum Non Conveniens*

The doctrine of *forum non conveniens* allows a court to "dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). In the Second Circuit, courts analyze *forum non conveniens* in three steps: "(1) determine the degree of deference properly accorded the plaintiff's choice of forum; (2) consider whether the

alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute; and (3) balance the private and public interests implicated in the choice of forum." *Aenergy, S.A. v. Republic of Angola* (*Aenergy II*), 31 F.4th 119, 128 (2d Cir. 2022) (quoting *Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 145 (2d Cir. 2022)). The "decision to dismiss by reason of *forum non conveniens* is confided to the sound discretion of the district court, to which substantial deference is given." *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003). Here, the Magistrate Judge properly applied the three-step analysis and soundly concluded that the case should be dismissed based on *forum non conveniens*. *See* R&R at 23-49.

### A. Plaintiff's Choice of Forum

"The 'first level of inquiry' in a forum non conveniens analysis is to determine what deference is owed a plaintiff's choice of forum." *Monegasque De Reassurances S.A.M. (monde Re) v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 498 (2d Cir. 2002) (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001)). Deference operates on a "sliding scale" and "circumstances may alter the degree of deference given a plaintiff's forum choice." *Pollux Holding, Ltd.*, 329 F.3d at 71. A plaintiff who sues in their home forum "is generally entitled to great deference," whereas "a foreign plaintiff [who] sues in a United States forum . . . is entitled to less deference because one may not easily presume that choice is convenient." *Id.* Factors that weigh in favor of greater deference include "the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Iragorri*, 274 F.3d at 72. "On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands . . . ." *Id.*

Here, the Magistrate Judge determined that Leong's choice of forum warrants minimal deference for at least six reasons.  R&R at 25-34.  The Court finds that each of those six reasons are legally and factually sound, and on *de novo* review, agrees with the Magistrate Judge's conclusion that Leong's choice of forum is entitled to some, albeit minimal, deference.

First, Leong is not at home in this District because he is a Portuguese citizen and photojournalist residing in Lisbon, Portugal.  FAC ¶ 6; *see* R&R at 25.  Therefore, Leong's choice of a United States forum is afforded less deference on this basis – a conclusion the Magistrate Judge properly reached and to which Leong does not object.  *See* R&R at 25-26; *see, e.g.*, *Aenergy II*, 31 F.4th at 128 (affirming *forum non conveniens* dismissal where "the District Court reasonably afforded 'less deference' to the United States forum choice of AE – an entity incorporated in Angola – because it is a 'foreign plaintiff'" (internal citations omitted)).

Second, only one of the three Defendants – Getty US – is at home in this District.  *See* R&R at 26.  While Leong argues that greater deference is warranted because Getty US and AFP, along with some of the non-party Downstream Infringers, maintain offices in New York, *see* Obj. at 2, the Magistrate Judge considered these facts and correctly determined that the "fact that only one of the three Defendants is a New York domiciliary warrants Leong's choice of this forum 'some minor deference,'" R&R at 2 (quoting *Aenergy, S.A. v. Republic of Angola* (*Aenergy I*), No. 20-cv-03569 (JPC), 2021 WL 1998725, at *9 (S.D.N.Y. May 19, 2021) (affording "minimal deference, not great deference" to plaintiffs' choice of forum where only one defendant was "at home in this District")); *see also* R&R at 14-20.[6]  That AFP and the Getty

---

[6] As Defendants point out, *see* Resp. at 12, it is not clear that Leong even knew that Getty US is a New York company when he decided to file suit in this District, since the FAC alleges that Getty US is a Delaware corporation with a principal place of business in Washington, and Leong did not aver otherwise until he was corrected by Defendants on the instant motion.

Defendants agreed to apply New York law in their licensing agreement does not change this conclusion (Obj. at 2), since the central issue in dispute concerns Leong's relationship with AFP centered in Portugal, and the claims against the Getty Defendants largely turn on the outcome of the dispute between Leong and AFP in Portugal. *See, e.g.*, *Murray v. BBC*, 81 F.3d 287, 292-93 & n.2 (2d Cir. 1996) (affording plaintiff's "choice of forum less deference than that given to domestic plaintiffs" because copyright dispute was centered abroad and claims against U.S. defendant that "exist[ed] to exploit the BBC's rights in the American market" would "turn on the outcome" of the dispute between the foreign parties).

Third, the Magistrate Judge concluded, and the Court agrees, that less deference is warranted because "Leong, a licensed Portuguese photographer, chose to do business in Portugal with the Portuguese bureau of a French company." R&R at 26; *see, e.g.*, *Aenergy I*, 2021 WL 1998725, at *9 ("Courts routinely have little sympathy for plaintiffs . . . who conduct business in foreign lands and later try to cry foul here.") (collecting cases).

Fourth, Leong previously chose to litigate disputes involving the 2010 Agreement, including the validity of Clause 7 with respect to copyrights of his photographs, in Portugal rather than in this District. Under these circumstances, the Court agrees that "Leong's 'decision to file suit in this District . . . smacks of forum shopping rather than a genuine pursuit of convenience," and represents the kind of "tactical maneuver that is not protected by the deference generally owed to the plaintiffs' choice of forum." R&R at 26 (internal brackets and citations omitted); *see, e.g.*, *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 698 (S.D.N.Y. 2003) (finding plaintiffs' choice of forum owed minimal deference where they sued in the United States only after "pursu[ing] various remedies in the Russian court system with unsatisfactory results").

Leong raises several objections to the conclusion that his decision to sue in this District was motivated by forum-shopping.  Obj. at 2-6.  He first argues that Articles 576 and 602 of the Portuguese Civil Code ("Portuguese Civil Code") support his decision to sue here because they show that Portuguese courts could not adjudicate his claims.  *Id*. at 3-4.  Leong did not raise an argument based on Article 576 and 602 of the Portuguese Civil Code below, so this argument is waived and need not be considered by the Court.  *See, e.g.*, *Gladden*, 394 F. Supp. 3d at 480 ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." (internal citation omitted)); *see, e.g.*, *Stone v. Griffin*, No. 17-cv-08741 (VEC), 2021 WL 396699, at *4 (S.D.N.Y. Feb. 4, 2021) (rejecting argument first raised as part of objections because it "is not considered an objection and the Court need not consider it").  In any event, Leong's argument is unconvincing and inadequately supported.  The English version of the Portuguese Civil Code to which Leong cites is from 1867 and is the law of Goa – a *former* Portuguese territory.  Obj. at 4 n.3; Resp. at 14.  The current versions of Articles 576 and 602, according to Defendants, were enacted in 1967 and pertain to issues of evidence and general liability, not intellectual property.  Resp. at 14.  Leong's belated and ill-explained reference to the Portuguese Civil Code is unavailing.

Leong similarly objects that, because federal law provides federal courts "exclusive jurisdiction" to hear U.S. copyright claims, he had no choice but to bring his claims here.  Obj. at 1-2.  Relying on the Federalist Papers, 28 U.S.C. § 1338(a), and two cases, Leong complains that the R&R "completely ignores" this argument.  Obj. at 1-2.  However, Leong did not raise this argument in his opposition to the motion to dismiss, and only presented these authorities in a supplemental letter after briefing and oral argument.  *See* ECF No. 89 at 2.  Leong has therefore

waived this argument.  *See Gladden*, 394 F. Supp. 3d at 480; *Stone*, 2021 WL 396699, at *4.

Even if considered, Leong's argument is inconsistent with the law in the Second Circuit.  Courts

apply *forum non conveniens* to cases for which federal courts have "exclusive jurisdiction," and

the Second Circuit has affirmed the dismissal of U.S. copyright infringement claims based on

*forum non conveniens*, including in a case cited in the R&R that Leong does not address.  *See*

*Murray*, 81 F.3d at 293; *see e.g.*, *The Wave Studio, LLC v. Gen. Hotel Mgmt.*, 712 F. App'x 88,

90 (2d Cir. 2018) (affirming dismissal of U.S. copyright claims based on *forum non convneniens*

because the "record contains no reason to conclude that Singapore courts are not entirely capable

of properly adjudicating copyright ownership and infringement claims").[7]  In *Murray*, for

example, the plaintiff brought "claims based on copyright infringement under both United States

and English law," including against a corporation based in the United States.  *Id*. at 289; *see also*

*id.* at 293 & n.2.  The Second Circuit rejected the plaintiff's argument that the existence of

claims based on U.S. copyright law and infringement in the United States favor adjudication in

the United States, and concluded that the plaintiff's claims would be more conveniently

adjudicated in the United Kingdom, where the underlying licensing agreement and disputed

issues were based.  *Id*. at 292-94.  So too here, Leong's claims would be more conveniently

adjudicated in Portugal, where the underlying licensing agreement, core events, and disputed

issues are centered.

---

[7] The two cases cited by Leong are inapposite, as neither applied the *forum non conveniens* doctrine or addressed whether foreign courts could adjudicate U.S. copyright claims, and instead analyzed whether the plaintiffs' claims in those cases supported the exercise of federal question jurisdiction – an issue not in dispute in this case.  *See* Obj. at 1-2 (citing *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000) and *Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004)).

Leong also retreads arguments from below that he was motivated to sue in this District because he could not have done so in Portugal. *See* Obj. at 2-6. He concedes that these arguments, which reiterate arguments made to the Magistrate Judge, only warrant reviewing whether the R&R is "clearly erroneous." *Id*. at 4; *see Harris*, 338 F. Supp. 3d at 174 (reviewing argument that "reiterates the original arguments . . . strictly for clear error"). The Magistrate Judge's findings that Leong was motivated in part by forum-shopping, and that Portugal is an adequate forum, are not clearly erroneous. Even on a *de novo* review, Leong's arguments are not convincing for multiple reasons. Leong contends that a U.S. copyright claim is unavailable under Article 63 of the Portuguese Civil Code of Author's Rights ("CDADC"), *see* Obj. at 4, but Defendants have submitted declarations from Portuguese law experts disputing Leong's arguments and opining that such claims are available in Portuguese courts, including under Article 348 of the Portuguese Civil Code and the Rome II Regulation, *see* R&R at 36-38 (citing, in part, ECF Nos. 56, 72-1); Resp. at 14 & n.13. One of those experts affirms that "there is no legal obstacle that prevents Portuguese courts from having international jurisdiction to consider the claims and issues and matters which Mr. Leong is now attempting to raise in the United States." ECF No. 56 ¶ 29; *see also* R&R at 37-39 (finding that Leong's experts do not adequately rebut Defendants' experts). Further, "Leong's willingness to invoke the jurisdiction of Portuguese courts not once, but twice, undermines the arguments he now makes about their supposed inadequacy as an alternative forum." R&R at 39. In any event, forum-shopping is merely one factor this Court considers in determining the appropriate deference afforded to Leong's choice of forum, and it is not alone determinative of the Court's decision.

Fifth, many of the events underlying Leong's claims occurred not in this District – or anywhere in the United States – but in Portugal. As the Magistrate Judge explained, this

includes Leong's "creation of many of the Leong Photographs, his entry into the 2010
Agreement, AFP's supervision of his employment as a Staffer, his activities as a union delegate
for the [Sindicato dos Jornalistas], the events that he alleges were the pretext for his firing, and
the First and Second Portuguese Proceedings." R&R at 27-28. Moreover, Leong created the
Leong Photographs as a photojournalist registered with Portugal's Carteira Profissional de
Jornalista and under the Portuguese Code of Copyright. FAC ¶¶ 27, 55, 68. These
circumstances outweigh the relatively slim connection to this District and warrant a lesser degree
of deference. *See* R&R at 27-28 (citing *Aenergy I.*, 2021 WL 1998725, at *10; *Owens v. Turkiye
Halk Bankasi A.S.*, No. 20-cv-02648 (DLC), 2021 WL 638975, at *4 (S.D.N.Y. Feb. 16, 2021));
*see, e.g.*, *Murray*, 81 F.3d at 292-93 & n.2 (concluding that plaintiff's choice of U.S. forum was
owed lesser deference where copyright dispute was centered abroad, even where plaintiff also
brought U.S. copyright claims against Delaware corporation that exploited the rights in the U.S.
market).

Leong argues that he is the presumed owner of photographs that he registered with a U.S.
copyright within five years of first publication, and that the Magistrate Judge erroneously placed
a burden on Leong to prove such ownership. *See* Obj. at 9-10. As such, he argues that the
Magistrate Judge placed undue weight on Portugal as the locus of this dispute and source of
evidence and law when the center is in fact the United States. *Id*. The Court disagrees. Contrary
to Leong's objection, the Magistrate Judge recognized that registration can be "'prima facie
evidence' of a copyright's validity" and did not decide the issue of ownership. R&R at 31.
Counsel for Leong indeed has maintained that "the source of [his] rights on the photographs" is
the act of "[a]uthorship" (which occurred in Portugal), not their subsequent registration, and he
has conceded that "[c]opyright law in both [the] U.S. and Portugal is the same on this issue" –

indicating that Portugal is the locus of this dispute regardless of which country's laws are applied.  ECF No. 93-1 at 48:7-18; *see* R&R 31-32.  Furthermore, assuming Leong is entitled to the presumption, it is not irrebuttable and evidence relevant to ultimate adjudication is centered in Portugal.  Finally, Leong concedes that the presumption would only apply to a small subset of the Leong Photographs – 7,343 of the total 34,716 photographs at issue in this litigation – and it therefore has limited application to this case.  *See* Obj. at 9; FAC ¶ 42.

Sixth, the Magistrate Judge found that Leong's selection of Portuguese law and Portuguese courts as the exclusive forum for "[a]ny litigation arising from" the 2010 Agreement "reinforces the decision to afford minimal deference to Leong's choice of forum."  R&R at 28-30; ECF No. 1-2 at 7 ¶ 15.  Restating arguments from below, Leong objects that the R&R's holding that the forum-selection clause "requires litigation in Portugal is clearly erroneous."  Obj. at 11-14.  The Court disagrees.

The Magistrate Judge properly found that the forum selection clause, Clause 15, evinced Leong's bargained-for agreement to litigate issues – including copyright disputes – arising from the 2010 Agreement exclusively in Portuguese courts.  *See* R&R at 28-30.  Clause 15 is mandatory in effect and encompasses at least some of Leong's claims; indeed, Leong brought claims regarding the same or similar facts against AFP under the 2010 Agreement in Portugal.  Leong does not dispute that Clause 15 was communicated to him.  Nor has Leong rebutted the clause's presumptive enforceability.  *See id.*; *see generally Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007).  Therefore, and as the Magistrate Judge stated, "even if the Court did not expressly enforce Clause 15, the fact that Leong agreed to it, and filed suit alleging similar claims in a Portuguese court, in accordance with Clause 15, provides strong evidence for Leong's prior preference for Portuguese courts for disputes involving his ownership of the Leong

Photographs, until forum shopping considerations drew him to a United States court."  R&R

at 30.  The Court finds that Leong's selection of Portuguese courts and law in the 2010

Agreement, and prior litigation of a copyright dispute pertaining to similar facts in Portugal

under that agreement, bolster the already strong evidence of forum-shopping and lessen the

degree of deference to which his choice of forum is entitled.  *See, e.g.*, *Androb Jewelry Serv.,*

*Inc. v. Malca-Amit USA, LLC*, No. 16-cv-05171 (AJN), 2017 WL 4712422, at *9 (S.D.N.Y.

Sept. 25, 2017) (finding plaintiff's "choice of forum merits less weight" because the plaintiff

selected other forum in agreement applicable to some but not all claims in the case); c*f. Atl.*

*Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (noting that

"when a plaintiff agrees by contract to bring suit only in a specified forum – presumably in

exchange for other binding promises by the defendant – the plaintiff has effectively exercised its

'venue privilege' before a dispute arises [and o]nly that initial choice deserves deference, and the

plaintiff must bear the burden of showing why the court should not transfer the case to the forum

to which the parties agreed").[8]

---

[8] Defendants state in a footnote that Clause 15 warrants "an alternative ground for complete
dismissal rather than merely a component of *forum non conveniens*."  Resp. at 10.  Because
Defendants did not present this argument other than in the footnote, nor file an objection to the
R&R, the Court does not reach the issue of whether Clause 15 alone provides an alternative
ground for dismissal.  Leong argues that Clause 15 does not apply to the Getty Defendants or the
Stringer Photos.  *See* Obj. at 12-13.  Leong raised the former argument as a footnote in his
opposition to the motion to dismiss, *see* ECF No. 66 at 23 n.28, and the latter in a supplemental
letter after full briefing on the motion to dismiss, *see* ECF No. 89 at 3, but not in his opposition
brief below.  The Court concludes that this argument is waived.  Leong's argument is also
unavailing, since the Court's analysis of Clause 15 is only one factor in its determination of the
appropriate deference owed to Leong's choice of forum, and the Court would reach the same
conclusion even if Clause 15 does not apply to the Getty Defendants and the Stringer Photos.
*See also Lavazza Premium Coffees Corp. v. Prime Line Distribs.*, 575 F. Supp. 3d 445, 467
(S.D.N.Y. 2021) (finding that, "[a]lthough the Agreement's forum-selection clause does not
encompass Luigi's claims, 'that does not render the clause irrelevant'" since it applied to
"factually intertwined" claims (internal citation omitted)).

In sum, considering the totality of circumstances, Leong's choice of forum is entitled to minimal deference. *See* R&R at 34; *see, e.g.*, *Aenergy II*, 31 F.4th at 128 (affirming decision "affording minimal deference to [the plaintiff]'s forum choice").

### a.   Adequate Alternative Forum

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding, Ltd.*, 329 F.3d at 75.   Portuguese courts are an adequate alternative forum, especially with dismissal subject to the conditions recommended by the Magistrate Judge. *See* R&R at 34-40.

First, Defendants are amenable to service of process in Portugal because all Defendants have "consented to jurisdiction in Portugal, and agreed to accept service, waive any statute of limitations defenses, and refrain from arguing that Leong is precluded from filing an action alleging that Clause 7 was a license that he rescinded." *Id.* at 34.   Further, the Court's dismissal will be subject to Defendants' consent to these conditions, ensuring that Defendants are amenable to suit in Portuguese courts. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 477 (2d Cir. 2002) ("An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy the alternative forum requirement." (quoting *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 57 (2d Cir. 2000) (alterations adopted)); *see, e.g.*, *Rudersdal, EEOD v. Harris*, No. 18-cv-11072 (GHW), 2020 WL 5836517, at *11 (S.D.N.Y. Sept. 30, 2020) (finding defendants' consent and conditional dismissal sufficient to "ensure Bulgaria has jurisdiction over them").

Second, as the Magistrate Judge determined, Portuguese courts permit litigation over the subject matter of Leong's dispute.   R&R at 34-40.   Leong raises several objections, first arguing that the Magistrate Judge erroneously placed the burden of showing an adequate alternative forum on him instead of on Defendants.   Obj. at 7.   That argument misconstrues the R&R.   The

Magistrate Judge properly recognized that "Defendants 'bear[] the burden of demonstrating that an adequate alternative forum exists,'" and proceeded to analyze both parties' Portuguese law experts and other facts under this standard.  R&R at 34-39 (quoting *Bohn v. Bartels*, 620 F. Supp. 2d 418, 430 (S.D.N.Y. 2007)).  Leong does not specifically address in his Objection the evidence and arguments presented below that show Portugal is an adequate alternative forum.  *See generally* Obj. at 6-8.  Nevertheless, the Court has reviewed the record and finds persuasive that Leong has already filed two lawsuits in Portuguese courts against AFP – one that ended in a favorable resolution for Leong and the other that concluded with Leong's voluntary withdrawal – which support a finding that Portugal is an adequate forum.  *See* R&R at 35-36 (collecting cases); *see also, e.g.*, *Aenergy I*, 2021 WL 1998725, at *15 (finding "the fact that Plaintiffs have sought relief in the Angolan judiciary cuts against Plaintiffs' claims that Angola is an inconvenient forum"); *Base Metal Trading SA*, 253 F. Supp. 2d at 707 (finding Russia to be an adequate forum where the "plaintiffs in this case have similarly pursued relief in the Russian courts until the results were not to their liking").

Furthermore, Defendants demonstrated through their law experts that "there is no legal obstacle that prevents Portuguese courts from having international jurisdiction to consider the claims and issues and matters which Mr. Leong is now attempting to raise in the United States." ECF No. 56 ¶ 29.  Leong's experts opined that Leong could not pursue precisely the same causes of action in Portugal.  *See* ECF Nos. 59, 60, 62.  However, "[t]he availability of an adequate alternate forum does not depend on the existence of the identical cause[s] of action in the other forum."  *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998).  The Court agrees with the Magistrate Judge's determination that, considering both parties' law

experts and the circumstances of this litigation, Portugal is an adequate alternative forum.  *See* R&R at 34-40.

Leong argues that Portuguese courts are not adequate because his voluntary withdrawal of the Second Portuguese Proceeding precludes him from litigating the same issue in Portugal again.  *See* Obj. at 6-8; *see also* ECF No. 66 at 7 n.8, 10-11.  This argument seeks a second bite at the apple, as Leong raised and the Magistrate Judge soundly rejected the same argument below.  *See* R&R at 39-40.  In any event, the Court finds the argument unconvincing for several reasons.  First, Leong elsewhere argues that his "copyright claims exist independently" from the 2010 Agreement he litigated in Portugal, *see* Obj. at 23, undermining his contention that his claims are precluded because they are the same "claims that were filed" in Portugal, *id*. at 8.  Second, Defendants' have presented evidence that Leong is *not* precluded from pursuing his claims – based on the theory that the 2010 Agreement provided for a license and not an assignment of copyrights – in Portugal.  *See* ECF No. 71 ¶¶ 25-27 (opining that Leong's "claims are not precluded in Portugal").  Third, Defendants urge, and Leong does not dispute in his Objection, that Portuguese law will bear on any preclusive effect of the dismissal order of the Second Portuguese Proceeding on his claims; this is a determination that Portuguese courts are well equipped to make.  *See generally* Obj. at 6-8; Resp. at 19-20.  Finally, and importantly, Defendants have agreed not to argue that Leong's instant theory is precluded in Portugal, and that agreement is a condition of the Court's dismissal.  R&R at 67; Resp. at 20.

Accordingly, the Court finds that Portuguese courts are an adequate alternative forum.  *See* R&R at 40; *see, e.g.*, *Bohn*, 620 F. Supp. 2d at 430 (finding that "the Court is satisfied that an alternative forum exists in Portugal" where the plaintiff already filed an action "against the same parties for the same claims" in Portugal).

### b.  Balancing Private and Public Interests

After determining the degree of deference warranted and whether the alternative forum is adequate, the Court must assess private and public interest factors bearing on *forum non conveniens*.  *See Aenergy II*, 31 F.4th at 132.  The Court finds that these factors, on whole, weigh in favor of litigating in Portugal.

### i.  Private Interests

The private interests courts consider are: "(a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive."  *Do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 306 (S.D.N.Y. 2007); *see Aenergy II*, 31 F.4th at 132.  The Magistrate Judge analyzed each factor in turn and concluded that "the private interest factors weigh in favor of litigating this case in Portugal."  R&R at 41.

As the Magistrate Judge stated, "Leong is a Portuguese photographer based out of AFP's Lisbon Bureau who entered into an employment agreement the interpretation of which is governed by Portuguese law and which designated Portuguese courts as the exclusive forum for disputes concerning its provisions."  R&R at 41.  The Leong Photographs were primarily taken in Portugal and none are alleged to be taken in the United States; all of the witnesses Leong identified in the Second Portuguese Proceeding with knowledge of the dispute over Clause 7 resided in Portugal, and other relevant witnesses appear to reside in Europe but not in the United States; many witnesses' testimony and documents would need to be translated from Portuguese to English if the dispute were litigated here; Leong would not be precluded from seeking to enforce a judgment from Portuguese courts here; and, given the Court's separate determination

that it would be unreasonable to exercise personal jurisdiction over AFP, it would be more practical and cost-effective to litigate the dispute in one case in Portugal.  *See* R&R at 41-45.

In his Objection, Leong raises a new argument that the Court should apply *forum non conveniens* differently to the Getty Defendants than AFP, and allow the case to proceed in this District against the Getty Defendants while Leong and AFP litigate in Portugal.  *See* Obj. at 20-24.  Leong did not present this argument below, other than one sentence in a supplemental letter that suggested the Court should allow discovery against the Getty Defendants to proceed.  *See* ECF No. 89 at 3.  Leong has therefore waived this argument.  *See Gladden*, 394 F. Supp. 3d at 480; *Stone*, 2021 WL 396699, at *4.  The Court also rejects the argument because unduly severing this litigation into proceedings in Portugal and this District would be an inefficient use of resources, impose unnecessary costs on parties and witnesses, and otherwise undermine the convenience that the Court's *forum non conveniens* determination seeks to ensure.  Indeed, Leong elsewhere states that "Leong has an interest in resolving his claims against Getty and AFP in a single proceeding," undermining his argument that the Court should sever this proceeding into separate actions in this District and Portugal.  Obj. at 19 (internal citation, brackets, and quotation marks omitted).

In sum, the Court finds that the relevant private interest factors weigh in favor of litigating in Portugal.  *See, e.g.*, *Do Rosario Veiga*, 486 F. Supp. 2d at 307 (finding private interests favor dismissal because the foreign forum "is the more convenient forum for the conduct of the bulk of pretrial factual investigations, discovery and other proceedings that are entailed in the litigation, and the United States would be a far costlier and more inconvenient venue for witnesses and parties to travel to for any subsequent trial").

### i. Public Interests

The public interest factors are: "(a) administrative difficulties relating to court congestion; (b) imposing jury duty on citizens of the forum; (c) having local disputes settled locally; and (d) avoiding problems associated with the application of foreign law." *Id*.  The Magistrate Judge correctly concluded that the first factor is neutral, as there is no indication that Portuguese courts are more or less congested than this Court, and that the remaining factors weigh in favor of dismissal.  R&R at 45-47.  Contrary to Leong's argument that any "limited interest Portugal may have is far outweighed by this forum's interest," Obj. at 5, the crux of this case is a dispute centered in Portugal, regarding a Portuguese citizen, who entered a contract in Portugal, under Portuguese law, in the Portuguese language, concerning ownership rights of photographs taken in Portugal and around the world but not in the United States, and who has twice sued AFP in Portuguese courts.  *See* R&R at 46.  This is a dispute more appropriately considered by jurors in Portugal than in this District, and adjudication in Portugal would allow Portuguese courts to apply Portuguese law to the threshold issues.  *Id*.

Accordingly, for all of these reasons and those elaborated upon in the R&R, the Court finds that dismissal based on *forum non conveniens* and subject to the conditions set forth in the R&R and in this opinion is warranted.  *See* R&R at 21-49; *see, e.g.*, *Aenergy II*, 31 F.4th at 135 (affirming dismissal on grounds of *forum non conveniens*).

## II. Personal Jurisdiction

As an alternative ground for dismissal of AFP, the Magistrate Judge determined that, although New York's long-arm statute extends to AFP, exercising personal jurisdiction would be unreasonable under the circumstances.  *See* R&R at 55-67.  This Court reaches the same conclusion.

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168-69 (2d Cir. 2015) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).  Where minimum contacts exist, "the defendant has to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id.* (quoting *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 173 (2d Cir. 2013)).  These considerations include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).[9]

Although the reasonableness of exercising personal jurisdiction over AFP is a closer question, the Court finds that Defendants have presented a compelling case that the presence of considerations other than minimum contacts would render jurisdiction over AFP unreasonable. *See, e.g.*, *Aero AG Holdings, LLC v. Huggoes Fashion LLC*, No. 21-cv-09499 (VEC) (SLC), 2022 WL 4463896, at *2-4 (S.D.N.Y. Sept. 26, 2022) (finding New York's long-arm statute extended to defendants but exercising personal jurisdiction would be unreasonable); *Sherwin-*

---

[9] In considering personal jurisdiction, the Magistrate Judge considered additional background facts from affidavits and took judicial notice of facts presented by the parties; the parties do not object to consideration of those facts, and the Court incorporates them herein.  *See* R&R at 52-55.

*Williams Co. v. C.V.*, No. 14-cv-06227 (RA), 2016 WL 354898, at *7 (S.D.N.Y. Jan. 28, 2016) (same).

First, the Court finds that exercising jurisdiction will impose a burden on AFP.  Leong is correct that AFP has a relatively small news reporting office in New York and previously litigated a different case in this District.  Obj. at 16-17; *see* R&R at 64.  However, AFP is a French corporation that manages its relationship with Getty US in France and maintains its relevant servers in France, evidence and AFP personnel relevant to this dispute are centered abroad, and neither AFP's satellite office nor its prior lawsuit in New York directly bear on this case.  R&R at 64 (citing ECF No. 55 ¶¶ 8-10).  While mindful that modern technology has lessened some burdens on foreign litigants, the Court finds that defending this suit in New York will impose an undue burden on AFP, and that this factor weighs in favor of finding the exercise of jurisdiction over AFP to be unreasonable.  *See* R&R at 64 (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996)).

Leong argues that AFP's residence in France and the location of evidence abroad does not weigh in favor of finding a burden on AFP, and he cites *Licci* as a case where the court found personal jurisdiction reasonable even where the parties and evidence were located abroad.  Obj. at 16-17.  *Licci*, however, is plainly distinguishable.  *See* 732 F.3d at 164.  In that case, the plaintiffs – which included U.S. citizens – alleged that the defendant bank intentionally and repeatedly used its New York bank account "to wire millions of dollars on behalf of Hizballah" so that Hizballah could "'carry out terrorist attacks,' including the rocket attacks in which the plaintiffs or their family members were injured."  *Id*. at 166.  Although much evidence was located abroad, the Second Circuit determined that personal jurisdiction would be reasonable under the facts of that case, considering the government's interest that its banks not be "used as

an instrument in support of terrorism, money laundering, or other nefarious ends." *Id.* at 174. In contrast, Leong is Portuguese and not a United States citizen, and the weighty interests in preventing a bank from intentionally and repeatedly acting in this District to facilitate terrorism are entirely absent. Leong also cites *Kernan v. Kurz-Hastings., Inc.*, 175 F.3d 236 (2d Cir. 1999), but in that case, the Second Circuit concluded that "[t]here would, of course, be a substantial burden imposed on [the defendant], a Japanese manufacturer, if it is forced to defend a suit in New York," and that this factor, although not dispositive, "weighs in [the defendant]'s favor[.]" *Id.* at 244. Here, too, the burden on AFP from defending this suit in this District weighs in AFP's favor.

Second, New York has, at most, a minimal interest in adjudicating this case. *See* R&R at 64-65. Leong argues that New York has a "significant interest" because he asserts U.S. copyright claims, including against Getty US and some non-parties based in New York. Obj. at 17-18. Even assuming New York has some general interest in protecting against U.S. copyright infringement in New York, the gravamen of *this case* lies in Portugal and not in New York. It was in Portugal that Leong entered into his business relationship with AFP and sued AFP twice regarding that relationship; it is under Portuguese law that Leong and AFP memorialized their relationship in the 2010 Agreement; and Leong and AFP previously selected Portuguese law and Portuguese courts as their contractual choices. *See* R&R at 64-65 (collecting cases); *see Sherwin-Williams Co.*, 2016 WL 354898, at *5 (finding that "New York has no interest in adjudicating this case" where, among other things, neither party was a citizen of New York and the underlying agreements selected foreign law and courts); *Metro. Life Ins. Co.*, 84 F.3d at 574 (concluding that dispute "implicates absolutely no interest" of the forum state where the plaintiff was incorporated and had its principal place of business elsewhere).

Third, "a New York court is no more convenient or efficient than the alternatives." *Sherwin-Williams Co.*, 2016 WL 354898, at *5. As the Magistrate Judge succinctly stated, adjudication in this District is not more convenient to Leong than "Portugal, where he lives, is licensed, took many of the photographs, worked for AFP pursuant to the 2010 Agreement governed by Portuguese law, whose courts have twice already been amenable to hearing his claims against AFP, and where personal jurisdiction over AFP and the Getty Defendants would be indisputable." R&R at 65. Indeed, this Court has already determined that Leong's interest in litigating in this District is motivated at least in part by forum-shopping, and that this is not a convenient forum. *See supra* Discussion § I. Accordingly, this factor weighs heavily in favor of AFP.

Fourth, in evaluating the judicial system's interest in obtaining the most efficient resolution of the dispute, "courts generally consider where witnesses and evidence are likely to be located." *Metro. Life Ins. Co.*, 84 F.3d at 574. As the Court determined with respect to *forum non conveniens*, the locus of the dispute between Leong and AFP is in Portugal, where evidence and witnesses are located. *See supra* Discussion § I. Additionally, the underlying contract, applicable laws, and evidence are in Portuguese and would need to be translated for adjudication in this District, and the FAC repeatedly invokes Portuguese statutes and legal principles that will need to be analyzed. *Id*. While Leong argues that this adjudication would be more efficient in this District because the Court is familiar with the facts and legal issues, *see* Obj. at 19, this case is at a relatively early, pre-discovery phase, and Leong has already brought two prior lawsuits in Portuguese courts against AFP regarding the same or similar subject matters. Accordingly, this factor weighs heavily in favor of finding personal jurisdiction unreasonable.

Fifth, the Magistrate Judge properly determined that the last factor – the "shared interest of the states in furthering substantive social policies" – is, at most, neutral. *Chloe*, 616 F.3d at 164; *see* R&R at 66. Leong perfunctorily objects to this conclusion in two sentences, without elaboration or any citation. Obj. at 20. On review, the Court agrees that this factor favors neither party, especially since Leong has already sued in both this District and in Portugal to enforce his copyrights, Portuguese courts are amenable to hearing copyright claims, and both Portuguese and U.S. law provide for copyright protection. *See supra* Discussion § I.

Leong raises a final objection that the Magistrate Judge "improperly shift[ed] the burden on Plaintiff to prove that exercising jurisdiction would be unreasonable." Obj. at 15. Leong does not cite any portion of the R&R to support this assertion, and it is simply incorrect. The Magistrate Judge correctly applied the governing legal standards and concluded that "*AFP* has made a 'compelling case' that it would be unreasonable for New York to assert specific jurisdiction in this case . . . ." R&R at 66 (emphasis added). The Court agrees.

Accordingly, considering all of the relevant circumstances, the Court finds that exercising personal jurisdiction under the facts of this case would be unreasonable. Therefore, as an alternative basis for dismissal, the Court dismisses Leong's claims against AFP for lack of personal jurisdiction. *See, e.g.*, *Metro. Life Ins. Co.*, 84 F.3d at 575 (affirming dismissal because exercising personal jurisdiction would be unreasonable under the circumstances).

## CONCLUSION

Accordingly, the Court ADOPTS the R&R in its entirety. For the reasons stated above and in the R&R, Defendants' motion to dismiss is GRANTED. The case is DISMISSED pursuant to the doctrine of *forum non conveniens*, on the condition that Defendants agree to: (1) accept service in Portugal; (2) submit to the jurisdiction of the Lisbon District Court's Labour

Division and/or Intellectual Property Division; (3) waive any statute of limitations defense that may have arisen since the filing of this action; (4) toll the statute of limitations as to Leong's claims under the Act and permit Leong to move to reopen this action and reassert those claims in the event that a Portuguese court were to decline to hear such claims; and (5) agree that Leong is not precluded from arguing that Clause 7 created a license that he rescinded.  Additionally, this case is also DISMISSED as to AFP for lack of personal jurisdiction.

Dated:  March 30, 2023
      New York, New York

                SO ORDERED.

                JENNIFER L. ROCHON
                United States District Judge